# W. A. LANGLEY v. JOHN NORRIS.

No. 8091.  Decided July 21, 1943.
(173 S. W., 2d Series, 454.)

*O. D. Montgomery, Callaway & Reed* and *L. O. Langley,* all of Dallas, and *Sullivan & Sullivan,* of Big Springs, for petitioner.

The Court of Civil Appeals erred in holding that petitioner's motion for instructed verdict was properly overruled and that the contract in question was capable of being specifically performed; and in holding that it did not lack in mutuality, and that it could be specifically performed, and that defendant did all that his contract required of him when he offered to take and pay for 548 acres instead of the 620 acres, and that he could enforce specific performance for that portion of the land. 58 C. J., 884, sec. 40; Degheri v. Corabine, 102 N. J. Eq. 264, 140 Atl. 406; Richards v. Calley, 28 S. W. (2d) 1095; Burnett v. Mitchell, 158 S. W. 800; Waller v. Ross, 284 S. W. 228; 38 Tex. Jur., sec. 93.

*Thomas & Thomas,* of Big Springs, *Justice, Moore & Justice,* of Athens, *Culbertson, Morgan, Christopher & Bailey,* of Fort Worth, for respondents.

The plaintiff, being a bad faith purchaser and having no title in himself, cannot complain of the judgment on cross action of the defendant, as any uncertainty in the contract of sale is no defense on his part, because the uncertain provisions of the contract were not sought to be enforced by the parties to the contract and they were not enforced by the judgment of the court. The judgment of the Court of Civil Appeals was correct in decreeing that the defendant did all that was required of him when he offered to take that portion of the land to which title was good, and would take the remaining portion at the agreed price when its title was made good. Dohoney v. Womack, 20 S. W. 950; Estil v. Cole, 62 Texas 695; Stevens v. Palmour, 269 S. W. 1057; Hazzard v. Morrison, 104 Texas 589, 134 S. W. 142; 38 Tex. Jur. 698.

MR. JUDGE SMEDLEY, of the Commission of Appeals, delivered the opinion for the Court.

Petitioner Langley, claiming title through a deed from L. S. Mitchell and wife and Frank A. Baggett and wife executed April 6, 1940, sued respondent Norris for the title and possession of a section of land numbered 32 in Howard County. Norris made Mitchell and wife and Daggett and wife parties and by cross action sought against them and Langley specific performance of a written contract dated September 16, 1939, and executed about October 1, 1939, whereby Mitchell and wife and Baggett and wife agreed to sell and convey the section of land to Norris.

After return of a verdict favorable to Norris, the trial court rendered judgment for him against the other parties, awarding the land to him subject to liens securing specified sums found to be owing to Mitchell and wife and Baggett and wife and to Langley. On appeal by Langley alone, the Court of Civil Appeals affirmed the trial court's judgment. 167 S. W. (2d) 603.

By the terms of the written contract between Mitchell and wife and Baggett and wife as vendors and Morris as vendee, the vendors agreed to sell and convey Section 32 to the vendee and the vendee agreed to purchase the section of land from the vendors for $15.00 per acre, to be paid in cash. The vendee agreed immediately to make application to a loan company associated with the Federal Housing Administration for a loan on the land in an amount of 80% or more of the agreed purchase price, the money so procured to be used to pay vendors for the land, and the vendee to pay the balance of the agreed purchase money in cash. The vendors agreed to furnish an abstract of title showing a good and merchantable title to the land, subject only to an existing lien securing approximately $4,600.00, and provisions were made for examination of the abstract by the loan company, the correction of defects in the title, and the execution and delivery of the necessary instruments for closing the sale upon the approval of the title. The contract provided that in the event the loan in the amount of 80% or more of the agreed purchase price could not be secured by the vendee, then the contract should be null and void and of no force and effect. The next and concluding sentence of the contract is: "It is agreed that this instrument will not be recorded and that it will be null and void and of no force and effect on and after November 2, 1939."

It was discovered by a survey made in connection with the examination of the title that the section of land, believed by the parties to contain 640 acres or 620 acres, in fact contained 548 acres. The vendors had 620 acres within their enclosure, but the north 72 acres were within Section 29 lying immediately north of Section 32, the record title to which 72 acres was in Chris Anderson, the owner of Section 29. The Trial court's judgment contains the finding, supported by undisputed evidence, that the contract of sale was intended by the parties to cover the whole of the 620 acres within the vendors' enclosure.

Other material facts taken from findings made by the jury, which are supported by evidence, and from undisputed evidence, are as follows: On October 14, 1939, Norris and his wife made

application through the Great American Life Underwriters on the elaborate form of the Federal Housing Administration for a loan of $9,000.00. The application shows that an existing mortgage debt of $4,800 would be paid from the proceeds of the loan and that improvements of an estimated cost of $2,864.00 would be begun when the loan was approved. On October 19, 1939, Norris telegraphed the insurance company, inquiring what disposition had been made of his application, and on November 17, 1939, he was advised that commitment had been made by the Federal Housing Administration on November 13, 1939, to insure a loan of $8,400.00. The commitment was subject to approval of title and to construction of the improvements according to the plans and specifications submitted with the application.

Before making the application, Norris had caused plans and specifications to be prepared for the construction of a house on the land in accordance with Federal Housing Administration requirements and to cost $2,800.00, and in the month of November, 1939, Norris made arrangements to borrow from a Mrs. Smith the money to pay the balance of the consideration for the land.

Norris was in possession of the land in controversy as a tenant of Mitchell and Baggett when his contract to purchase it was executed and thereafter he remained in possession, claiming the right to it under the contract.

Not having heard from the insurance company about his application for the loan, Norris, a short time before November 2, 1939, wrote Mitchell a letter asking him to extend the time until November 15 so that he would be able to hear from his application for the loan, and on November 3, 1939, Mitchell, who was acting for all of the vendors, wrote a letter to Norris advising him that he could have the extension of the agreement to November 15. In another letter written November 15, 1939, Mitchell asked Norris to advise him how his loan negotiations were progressing and stated that he was willing to allow him a reasonable time "for exercising out your plan."

It clearly appears from this correspondence and other facts and circumstances in evidence that the last sentence in the contract providing that it should be null and void after November 2, 1939, was intended and understood by the parties to have reference to the obtaining of assurance or commitment for a loan on or before that date and not to the final completion of the entire transaction. The jury found in answer to a special issue that the

parties to the contract did not intend, when the contract was made, that everything necessary to be done should be completed and the sale closed by November 2, 1939. It further found that Mitchell and Baggett treated the contract as being in force and effect after November 2, 1939, and led Norris to believe that they did not intend to enforce the time limit as expressed in the original contract, if there was a time limit therein; that Norris relied upon Mitchell's letter of November 15, 1939, giving him a reasonable time in which to complete the contract and made valuable improvements on the land; that Norris offered within a reasonable time after November 2, 1939, to pay Mitchell and Baggett for all of that part of the land to which they could give good title; that Norris had made arrangements to pay for the land and was financially able to do so; and that Mitchell and Baggett, before they conveyed the land to Langley, refused to convey to Norris the 548 acres at $15.00 per acre unless he would also accept and pay for the 72 acres, the title to which was in dispute.

After the making of the agreements for extension evidenced by Mitchell's letter of November 3 and November 15, 1939, Mitchell from time to time urged Norris to complete his arrangements for closing the sale, but the defect in the title to the north 72 acres appeared when a survey was made in November or December, 1939, and both Mitchell and Norris did what they could to clear up the title, Mitchell going to the Land Commissioner's office several times and employing another surveyor to verify the work done by the surveyor employed by Norris. The defect was never corrected, however, until Mitchell on September 24, 1940, obtained the execution by Chris Anderson of a bundary agreement fixing the line between Sections 29 and 32 so that the 72 acres were included within the bounds of Section 32.

In the meanwhile, however, as early as February 4, 1940, Norris offered to accept and pay for the 548 acres, but Mitchell insisted upon his buying all of the land, and on March 4, 1940, Mitchell wrote Norris demanding that Norris pay for the land by posting the full purchase price in the First National Bank of Big Spring by March 9. This demand was that Norris take the title "just as it was" and pay for all of the land, including the 72 acres.

The commitment for the FHA loan to Norris was cancelled by the Federal Housing Administration or by the insurance company on March 16, 1940, the specific reason assigned for the

cancellation being that good title could not be given to the entire tract, which fell short about 70 acres. Norris thereafter made arrangements with a Mr. Hamlin for the money to pay for the land and caused the cashier of the Big Spring bank to notify Mitchell by letter on April 1, 1940, that Norris had arranged to make payment in full for the land as soon as Mitchell complied with the terms of the contract and that remittance would be made immediately upon the submission of the papers and the approval of title.

On April 6, 1940, Mitchell and wife anl Baggett and wife, for a recited consideration of $2,401.75 in cash and the assumption by the grantee of an indebtedness due the Southwestern Life Insurance Company, conveyed Section 32 to petitioner W. A. Langley. At the same time the grantors and the grantee executed a contract reciting that grantor could not deliver title to the 72 acres off the north part of the section, but would secure good title thereto within a reasonable time and that the grantee would thereupon pay grantors for the 72 acres. It was shown on the trial that Langley has not acquired title to the 72 acres and has resisted a suit by Mitchell and Baggett to compel him to pay for it. In this case Langley seeks to recover only the 548 acres.

In answer to special issues, the jury found that at the time Langley acquired his deed he knew that Norris was claiming that he had the right to purchase the land under the contract and that Langley had notice of the extension of time agreed upon for the performance of the contract between Mitchell and Baggett and Norris. These findings are supported by evidence. Langley testified that he had read the contract between Mitchell and Baggett and Norris, that he knew that Norris was in possession of the land, using and cultivating it, that he knew about the defect in the title to the 72 acres, that before he bought the land he told Mitchell to get through with Norris, and that Mitchell promised him "he would see that Norris was gotten out of the way."

■ Since Langley purchased the land with full knowledge of Norris' rights, he is in no better position than were Mitchell and Baggett, his grantors, to defend Norris' suit for specific performance. "One who, with knowledge, actual or constructive, of the executory contract acquires the legal title under or through a deed or mortgage executed by the vendor subsequently to an executory contract for the sale of the land * * *, may be compelled, at the suit of the vendee under the executory contract, to perform the contract by conveying the legal title, if the conditions are such that such relief could have been granted

against the vendor if he had not transferred the legal title."
Note 87 A. L. R., pp. 1505, 1521 and authorities cited. Scarborough v. Arrant, 25 Texas 129, 137; Estell v. Cole, 62 Texas 695, 700.

The facts and conditions existing at the time when Langley bought from Mitchell and Baggett and at the time when this suit was brought, which have been stated in considerable detail, are such that Norris was entitled to enforce his contract of purchase against Mitchell and Baggett, unless his rights under the contract terminated on November 2, 1939, or unless the contract was invalid and unenforceable for one of the reasons assigned by petitioner.

The jury found that the parties did not intend that everything necessary to be done should be completed and the sale closed by November 2, 1939. This finding may appear to be in conflict with the literal meaning of the last sentence of the contract, but it is a reasonable and, we think, a correct construction of that sentence when it is read together with the entire contract and in the light of the circumstances under which it was executed, and it accords with the construction that the parties gave the contract. Although dated September 16, 1939, the contract was executed about October 1, 1939. The vendee agreed to make application for a FHA loan. To secure that loan improvements had to be planned, completed and approved. The title had to be examined and defects corrected and the various steps taken that would be necessary in completing the sale and closing the loan. The parties could not reasonably have intended that all these things be completed within a month in the meticulous manner required by the Federal Housing Administration. We believe it is apparent from the entire contract, from the immediate context and from the acts of the parties under the contract that the time limitation in the last sentence related to the procuring of a commitment for a loan rather than to the final closing of the sale.

■ The contract in Baker v. Fell, 135 Texas 375, 144 S. W. (2d) 255, cited by petitioner, was similar to the contract in this case in its provision that it should be null and void if the Federal Lending Agencies did not within fifteen days from the date of the contract approve the vendee's application for a loan. It was held that the contract "expired in virtue of its own provisions" when the vendee failed to procure a commitment for a loan within fifteen days. There was in that case no agreement of the parties extending the time for procuring the commit-

ment. In this case the vendors agreed in writing to extend the time for procuring a commitment for the loan from November 2 to November 15, 1939, and on November 13, 1939, the commitment was made. Thereafter, on November 15, 1939, the vendors agreed in writing to allow Norris a reasonable time for working out his plans. Norris, relying upon these agreements, incurred expenses in connection with the application for the loan and made valuable improvements on the land. In our opinion, the Court of Civil Appeals correctly held that the vendors were bound by the agreement extending the time and that an additional consideration for the agreement was not required. Lane & Saylor v. Scott & Culver, 57 Texas 367; Lewis Bros. v. Pendleton, 227 S. W. 502.

■ We cannot sustain petitioner's contention that Norris' rights under the contract terminated when the commitment for the loan was cancelled on March 16, 1940. It is not shown that the cancellation was caused by any act or default on the part of Norris. On the contrary, the reason definitely assigned for the cancellation was the defect in the title to the north 72 acres of land, which Mitchell and Baggett did not cure until September, 1940. As early as February 4, 1940, Norris had offered to accept title to the 548 acres and to pay for that part of the land at the agreed price. Norris had the right to require the conveyance on that part of the land to which the vendors had good title. Hazzard v. Morrison, 104 Texas 589, 143 S. W. 142; Heirs of Roberts v. Lovejoy, 60 Texas 253; Pomeroy's Specific Performance of Contracts, (3d Ed.) pp. 445-446, Sec. 173; 4 Texas Law Review, pp. 376-381. There is no evidence of an inequality in value of different parts of the land that would render this general rule inappropriate. Mitchell and Baggett, however, continued to insist upon full payment for all of the land, although they could make good title to but part of it. Within sixteen days after the commitment was cancelled Norris procured the money to pay for the land from another source and caused the bank to notify Mitchell and Baggett that he had arranged to make full payment to them.

■ We approve also the action of the Court of Civil Appeals in rejecting the contention of petitioner that the contract, for want of mutuality, was not enforceable by Norris. There was mutuality of obligation, the promise of one party to the contract being a valid consideration for the promise of the other party. Texas Farm Bureau Cotton Ass'n. v. Stovall, 113 Texas 273, 284-286, 253 S. W. 1101. By the terms of the contract Norris expressly promised to make application for a FHA loan, in order

to procure the greater part of the purchase money, and to pay the balance in cash. And neither expressly or by plain implication he promised to pursue the application diligently and to execute the instruments and take the other steps reasonably necessary to close the purchase. The promises of the vendors were to submit evidence of good title, to cure defects in the title and upon approval of the title to execute and deliver a deed conveying the land.

Mutuality of remedy did not exist when the contract was made, because the remedy of specific performance was not then available to the vendors to compel the vendee to make the application for the loan and to do the various things that had to be done to procure its approval and to close it. The absence of mutuality of remedy when the contract is made does not render the promises of the parties any less obligatory and specific performance may be had if such mutality is thereafter supplied. Sanderson v. Sanderson, 130 Texas 264, 268-270, 109 S. W. (2d) 744, and authorities there cited; 58 C. J. pp. 867-868, paragraphs 20b and 21(2).

Norris had made arrangements to pay for the land, and was able to pay for it in cash, before the conveyance was made to Langley and long before this suit was filed. It is further shown by certificate of the clerk of the trial court, which we have permitted to be filed, that a short time after the rendition of the judgment in that court and before appeal to the Court of Civil Appeals was perfected, Norris paid to the clerk the amounts awarded by the trial court's judgment as purchase money to Mitchell and Baggett and to Langley.

■ An assignment in the application presents the point that specific performance should not have been awarded Norris because the contract is indefinite and uncertain, the contention being that "from the contract it is impossible to say whether the grantors were obligated to pay the $4,600.00 lien indebtedness out of the $9,300.00 cash consideration, or whether Norris was to pay $9,300.00 cash and take a general warranty deed subject to such lien indebtedness." Absolute certainty is not necessary. "The certainty required in a contract which renders its subject to an action for specific performance is a reasonable certainty." Wilson v. Beaty, 211 S. W. 524, 527 (application for writ of error refused) ; Stevens v. Palmour, 269 S. W. 1057, 1059-1060; Ward v. Stuart, 62 Texas 333, 335-336. In our opinion, the terms of the contract evidence with reasonable certainty the intention of the parties that the vendee pay the

vendors for the land the total consideration of $9,300.00, that is, $15.00 per acre for the 620 acres that the tract was believed to contain, and that the $4,600.00 note, secured by existing lien, be paid out of that total consideration.

The contract contains the express provision that the vendee shall pay for the land in cash the agreed price of $15.00 per acre. It obligates the vendee to make application for the FHA loan in an amount equal to 80% of the purchase price for the land, the proceeds of the loan to be used to pay for the land, and the difference between the amount of the loan and the agreed consideration to be paid in cash by the vendee. The FHA loan would have to be secured by a first lien. The reference made to the existing lien securing $4,600.00 is merely a representation that the vendors have a clear and unincumbered title except for that lien.

Finally, error is assigned to the trial court's judgment as not conforming to the pleadings and the evidence, in that the contract provided that the vendee pay $9,300.00, whereas the court adjudged that he should pay only $5,317.05 and made no provision for the payment of the outstanding lien indebtedness. If there is error in the judgment in this respect no injury is done by it to petitioner Langley. As to him the judgment is that he take nothing by his suit for the land and he is awarded judgment for what he has paid. He makes no complaint as to the amount awarded to him. Petitioner's complaint is that, because the judgment makes no provision for payment of the outstanding indebtedness secured by lien, he remains personally liable for it on his assumption thereof in the deed by which Mitchell and Baggett conveyed the land to him. The judgment herein awarding the land to Norris rendered ineffective the deed to Langley and in effect cancelled Langley's assumption of the outstanding debt. There is no evidence that the holder of that debt, the Southwestern Life Insurance Company, ever accepted or acted upon Langley's promise to pay the debt. Moreover, it is shown by a verified motion for contempt filed herein by respondent and by the verified answer thereto filed by petitioner that since the rendition of the judgment by the trial court the note and the lien securing it have been assigned to respondent Norris, In these circumstances no injury can be suffered by Langley from the failure of the trial court in its judgment to make disposition of the outstanding debt.

It is our opinion, after careful examination of the record and the briefs, that the trial court, on the jury's findings and the undisputed facts, rendered a correct judgment.

The judgments of the district court and Court of Civil Appeals are affirmed.

Opinion adopted by the Supreme Court July 21, 1943.