**ABBOTT et al. v. ADAMS.**

No. 14478.

Court of Civil Appeals of Texas.
Dallas.

March 21, 1952.

Rehearing Denied May 2, 1952.

Abbott, his existing but unidentified principal. On trial to the court and a defendant's judgment, plaintiffs Montgomery and Abbott have duly perfected an appeal. Appellee Mrs. Rheby B. (or Orville) Adams, a widow, now a resident of Kentucky but formerly of Collin County, owned three tracts of adjoining land, there situated, comprising some 94 acres, together with house, barn, fences and other improvements. The transactions which, as plaintiffs aver, constitute a completed contract of sale and purchase, are self-explanatory and reflected in a series of letters signed by Montgomery, Mrs. Adams, and Worley Smith, Secretary McKinney National Farm Loan Association, which, though numerous, must be quoted in material part:

"194 East 5th Street, Russellville, Kentucky. Jan. 1st, 1951. Mr. Morris Montgomery, Copeville, Texas. Dear Morris: I wonder if you can help me in the sale of my little farm out there, as I am very desirous of selling it * * *. Do you want or need it, or know of anyone who would be interested in buying it? Three thousand dollars, cash, and it can be anyone's property * * *. I have no use for it now * * * as have a nice farm here in this county, and guess will live in this town, until I die * * * that place is nothing to brag about, but it can, and has made money for us and others. The house alone (as well as barn), could be moved onto a lot * * with your long trailer, and bring you in a good income * * * butane gas tank and lights would help a long way, about renting it. Please let me hear from you and tell me what you think about it. Regards to your wife and family * * * your friend, /s/ Mrs. Orville Adams, Sr."

"Feb. 1, 1950. Copeville Tex Box 31 Mrs. Orvall Adams Dear Friend: Got your letter. In regards to weather we have had a 10 in snow. About your farm if you want to sell it dont rent it. Personally I am not buying any more land. Did anyone tell you about all tax going up. Anyway I have had several hot air prospects wanting your

Paul Worden and Roland Boyd, both of McKinney, for appellants.

McKool, McDaniel & Bader, of Dallas, for appellee.

YOUNG, Justice.

The suit below was in trespass to try title and for specific performance of an alleged contract for the sale of realty situated in Collin County and evidenced by an exchange of letters between Mrs. Adams (defendant landowner) and one Montgomery acting as agent for appellant

farm on a credit. I have shown your farm to one prospect. He is a reliable man in every respect. His word is his bond. He made me an offer I thought I should report to you. He bid Twentyfive hundred cash. Now I have 10 days on this bid. This is the only cash prospect I have to date. In case you are interested I will guarantee your money. I believe you know I don't want a pennie from eather party. I would recommend you McKinney Federal Land Bank agent closing any deal when made. Your friend, Maurice."

"Feb. 6, 1951. Russellville, Kentucky. Dear Maurice: Thank you for your letter, that came this morning, and glad to hear from you. Especially, as you have a Cash Offer for farm for me. I will take the twenty-five hundred dollars for it, that you said the prospect offered you, and I hope he is still interested in it. I have the abstract in my possession here, for the 44 odd acres, but the Federal Land Bank has the other fifty acres abstract in their hands, as that is the parcel of land, I still owe, something Under one hundred dollars on. When you write me, to do so, I will mail the abstract and all papers I have, to the Federal Land Bank, and write them to act as my agent in this matter. Please don't misunderstand me about this, but as I owe them the amount I said, also taxes Not Paid for this year, I think it right that they should handle it, and that way, keep me from having to make an expensive trip out there, to sign papers, as they can mail all necessary ones to me, and be signed, from here. * * * I will never thank you enough, if you do sell this for me * * * so please let me hear from you at your earliest convenience. Sincerely yours. Deed made in Mrs. Rheby Barnes Adams name. Mrs. Orville Adams, Sr. If the deal goes thru by your efforts, as described, I will be very happy."

"Feb. 9, 1951. Copeville, Texas Mrs. Adams Dear Friend: Got your letter today. In regard to the sale of your farm mail your papers to the agent of the federal land bank in McKinney, Texas as soon as you can. The deal can be handled through them without you being here. When your papers are ready my man is ready to close the deal. This prospect must have every thing in order. Then he will do as I told you. Your friend, Maurice Montgomery."

"Feb. 12th, 1951. Russellville, Kentucky. Dear Maurice: Your air mail letter just came, so am sending you one I had from man in F. L. B Loan Ass'n. saying he would act for me * * * the papers are all being sent to Mr. Worley Smith today. * * * I will be so glad to get this matter over with, as the farm isn't bringing me any money in, and a constant worry to me * * * don't know what would happen to the house and buildings, as no one living there to take care of things. Since last week, I have had three letters and one telegram from people wanting to buy the place but have told them all * * *. 'No soap,' as was expecting you to sell it for me. * * * Very best regards, I am sincerely, /s/ Mrs. Rheby Barnes Adams Mrs. Orville Adams, Sr."

"Feb. 18, 1951. My dear Maurice: I tried to call you other day, but your line was down, so the next bet was to contact Mr. Worley Smith in McKinney. * * * I want to tell you, I did not mean to interfere with your buyer of the farm, but did want to tell you the opportunity of getting more money for the place, and knowing the difference of about seven hundred dollars would help me so much, thought it possible could be handled. But, after seeing your view of it, I understand how you felt about it. Orville, Jr. said, 'Mother, if Maurice said he was selling the place, you should not have done anything about it * * * if he tells a fellow, he is going to build a chicken house out of cardboard, at such and such a time, he is going to do it.' So that is the way we both look upon your word * * * so, please accept my apologies for butting-in * * *

won't you? Mr. Smith called me back, and told me you didn't consent to my idea, and I asked him to contact you and tell you to let the papers for your man to go on thru * * * guess they were signed and I will be getting them tomorrow or sometime soon. I will have my banker here to notarize them and return at once. * * * Please remember I wasn't butting-in on your deal, I was only trying to notofy you that I was offered more money and thanks for all your help. Best regards * * * sincerely yours, Mrs. Orville Adams, Sr."

"March 1st, 1951. Mr. Maurice Montgomery, Copeville, Texas. Dear Mr. Montgomery: This is to advise you that I have taken my farm in Collin Co. Texas, off the market, and it is not for sale at this time. Sincerely, Mrs. Orville Adams, Sr., 194 East 5th Street Russellville, Kentucky."

"Russellville, Kentucky 194 East 5th Street Feb. 6th, 1951. McKinney National Farm Loan Association. Mr. Worley Smith, McKinney, Texas. My dear Mr. Smith: In your letter of Jan. 10th, when you sen- me receipt for last farm note * * * Loan No. P-251 you said if you could be of any further assistance to me, in the sale of my farm in Collin County, to let you know. Now, I am asking for that assistance and help on your part. Maurice Montgomery, Copeville, Texas, has a cash prospect for me for sale of the farm * * * twenty-five hundred cash dollars * * * so, if and when the deal comes up may I expect you to act for me, as agent of seeing money is sent to me * * * paying the small amount I owe on the note to Federal Land Bank, paying the last year's taxes, and sending me the difference of those two items and the twenty-five hundred dollars buyer is paying for it? If Mr Montgomery has a larger offer, that is OK * * * my arrangements with him, is for me to get the above specified amount * * *. I will send you the deeds and abstract of other parcels of land (Paid for) I have in my possession, when I further hear from you and Mr. Montgomery. Please let me have an early reply. Sincerely yours, /s/ Mrs. Rheby Barnes Adams."

"McKinney National Farm Loan Association Worley Smith Secretary-Treasurer 4% Federal Land Bank Loans 116 W. Louisiana Street McKinney, Texas February 8, 1951. Mrs. Orville Adams, Sr., 194 East 5th Street Russellville, Kentucky Dear Mrs. Adams: As outlined in your letter of February 6, I will be glad to collect the money for you when you sell the place. Besides paying taxes and the small balance on your loan with us, there will probably be an abstract and deed bill which usually the seller has to pay. It might be possible that Mr. Montgomery has in mind for the buyer to stand for this expense. I am glad to be of service to you and please advise Mr. Montgomery to bring the buyer to our office at 116 West Louisiana Street when he gets ready to settle for the land. Yours, truly, /s/ Worley Smith, Secretary-Treasurer."

Under the testimony, Smith's letter of February 8, upon receipt, was forwarded by appellee to Montgomery with the notation: "I failed to mention the abstract and deed bill to F. L. B. but if I pay for them it's O. K. But hope the buyer will do it." Worley Smith also testified that following the letter of February 8, Messrs. Abbott and Montgomery appeared at his office in McKinney, after which he (the witness) caused abstracts in his possession to be supplemented to date, turning them over to Abbott's attorney for examination of title; and in course of trial it was stipulated that due tender into court was made of the $2,500 cash offer.

It is not disputed that appellant Montgomery, a Collin County farm owner, was acting gratuitously for both parties in above transactions; making no claim against either of them, or interest in the land. The trial court, after setting forth most of the foregoing correspondence, found as a fact that the name of plaintiff Abbott—the prospective purchaser—was

not known to defendant until filing of suit about March 9, 1951; and, as conclusions of law, that (1) neither of the plaintiffs was entitled to judgment of specific performance against appellee because of want of mutuality in obligation and of remedy; and in particular that defendant Adams could not have specifically enforced the purported contract of sale against either Abbott or Montgomery; (2) that the property in question was not described with such certainty in the letters as to form a contract of sale; the court being "unable to determine with reasonable certainty the land referred to by such alleged contract"; and further, "(6) Plaintiffs are not entitled to specific performance on the alleged contract of sale of the above described premises for the reason that the letters relied upon by the plaintiffs did not constitute an offer and acceptance, necessary to create a binding contract, but were mere invitations to negotiate. (7) Plaintiff Abbott is not entitled to specific performance for the reason that the alleged contract is not binding upon plaintiff Abbott and defendant Adams. (8) That where the facts and circumstances surrounding a transaction are such that the court is asked to provide an equitable remedy, then the court has discretion as to whether or not equitable remedy will be granted, and in this case the court finds that inequities would be caused in granting specific performance." These findings and conclusions of court are countered by appellants in three points, viz.: "(1) This case should be reversed and rendered because the correspondence between the parties relied upon make out a complete contract in writing for the sale of real estate, mutually binding on both parties. (2) The land in question was sufficiently described and identified in the correspondence between the parties with the reasonable certainty required to enable the court to grant specific performance. (3) There is no evidence that any inequities would result from specific performance, and the denial of that remedy to appellant is an abuse of judicial discretion."

We will first consider above conclusion that the equitable remedy of specific performance should be withheld because of inequities that would result from a grant thereof under instant facts and circumstances. In Pomeroy, Eq.Jur., Fifth Ed., Vol. 4, p. 1040, the author, discussing specific performance, has this to say: "The granting the equitable remedy is, in the language ordinarily used, a matter of discretion, not of an arbitrary, capricious discretion, but of a sound judicial discretion, controlled by established principles of equity, and exercised upon a consideration of all the circumstances of each particular case. Where, however, the contract is in writing, is certain in its terms, is for a valuable consideration, is fair and just in all its provisions, and is capable of being enforced without hardship to either party, it is as much a matter of course for a court of equity to decree its specific performance as for a court of law to award a judgment of damages for its breach." Bennett v. Copeland, Tex.Sup., 235 S.W.2d 605; Schmidt v. Barr, 333 Ill. 494, 165 N.E. 131, 65 A.L.R. p. 1. Applying this well-settled rule to the present controversy, we find no intimation of inequities such as fraud or undue hardship incident to the bargain reflected by the initial correspondence. The offer of $2,500 cash on part of Abbott represented a fair value for the land; appellee's refusal to consummate the deal obviously resulting from a later and higher cash bid.

Appellee vigorously argues that these letters in phraseology amounted to no more than mere invitations to negotiate; in other words, without finality and reflecting only a hope that a sale would later develop. We do not so interpret the negotiations in question. Appellee's letter of January 1, 1951 to Montgomery seeking a market for her Collin County farm at $3,000 cash was countered by his answer of February 1, submitting the guaranteed offer of an undisclosed party of $2,500 cash; in turn accepted by Mrs. Adams on February 6 in letter advising location of abstracts and naming Federal Land Bank (Worley Smith) as agent in the matter; and Montgomery in further communication of February 9, requested that all title papers be mailed to said agency "as soon as you can." These writings together

with affirmative steps taken by plaintiff and Worley Smith (defendant's agent), as already noted, sufficiently demonstrate in our opinion an agreement of purchase and sale equally binding upon the parties. It is elementary that the promise of one party is a valid consideration for the promise of the other. Texas Farm Bureau Cotton Ass'n v. Stovall, 113 Tex. 273, 253 S.W. 1101; the promises here being concurrent and mutual. Langley v. Norris, Tex.Civ. App., 167 S.W.2d 603, affirmed 141 Tex. 405, 173 S.W.2d 454. And while it is true that all correspondence was in name of Montgomery acting on behalf of appellant, "One may act for an undisclosed principal in the purchase of real estate." Burris v. Hastert, Tex.Civ.App., 191 S.W. 2d 811, 814, writ ref.; Huffman v. Cartwright, 44 Tex. 296; Tynan v. Dullnig, Tex.Civ.App., 25 S.W. 465.

 There was likewise no lack of mutuality in remedies. The status of Abbott as an unnamed principal would constitute no impediment to a like suit by Mrs. Adams for specific performance had she assumed the role of actor; and a resort to parol evidence to establish identity of a principal whose existence is apparent, would not be inconsistent with any applicable rule of law. "It is not necessary, in order to bind the principal, that the memorandum should be executed in his name, and the requirement of the statute of frauds is satisfied if the memorandum is signed by the agent. The name of the principal may be disclosed by parol testimony." Tynan v. Dullnig, supra. A converse of the instant case is reflected in

Sorsby v. Thom, Tex.Civ.App., 122 S.W.2d 275, where names of vendors were not disclosed. It was there held, Syl. 2: "A contract of sale of land was not required to reveal names of vendors nor that the authority of vendors' agent to sell was in writing, in order to entitle purchaser to specific performance thereof, since the statute of conveyances does not apply to a contract of sale."

Salopek v. Logan, Tex.Civ.App., 256 S. W. 299, 300, strongly relied upon by appellee in support of her position, is readily distinguishable. There, the court was discussing a well-recognized exception to the general rule that an undisclosed principal may sue on contracts made by his authorized agent, i. e., fact situations involving personal trust and confidence.; in that connection the statement being made that, "The parties in such case are entitled to know with whom they are dealing"; and declarations in the cited case touching upon other exceptions may be regarded as dicta and not controlling of the instant facts. Furthermore, appellee here knew that Montgomery was acting for another, though his name was not disclosed, with resulting inapplicability of the principle referred to in Salopek's appeal.[1]

 Lastly, we are of opinion that the esteemed trial court erred in concluding that a decree of specific performance should be denied because of uncertainty and insufficiency of description relative to the subject matter of sale, i. e., the lands referred to in these letters. On the contrary, we think that the property in question was so described in the writings as that its identity

1. Even if it can be said that appellant Abbott was insufficiently bound as the "party to be charged" under the statute of frauds by his initial offer through Montgomery of $2,500, such absence of mutuality of remedy from standpoint of the vendor has been supplied by the petition of Abbott tendering performance and requisite consideration in cash. Milliken v. Townsend, Tex.Com.App., 16 S.W.2d 259; Langley v. Norris, 141 Tex. 405, 173 S.W.2d 454, 148 A.L.R. 555. Citing these cases, the editor in 49 Am.Jur., pp. 51, 52, under subhead "When Mutuality Must Exist," goes on to say, "the better opinion is that it is not essential that the mutuality of remedy exist at the inception of the contract, but that it is sufficient if such mutuality of remedy is available at the time suit is filed or even at the time of the decree, and that where the contract was originally lacking in mutuality this element may be supplied by voluntary performance on the part of the party seeking specific performance. Hence, the fact that when executed the contract was unilateral or was not specifically enforceable by both parties at its inception is not conclusive of the right of one of them subsequently to have specific performance."

has been made legally certain. Mrs. Adams refers to the premises as her farm located in Collin County and from other evidence it is shown to be the only land owned by her in Texas. The abstracts thereto were located, supplemented to date, and turned over to appellants' attorney for examination; total acreage was described in letter of January 29, not quoted, as being in three parcels, "the first original fifty acres and two parts (of the Standford heirs) of 22.something (acres) in each of the two"; and finally appellee points to where the deeds may be found and in whose name the lands there stand, viz.: "All are recorded in McKinney in Rhcby Barnes Adams' name." These writings were amply sufficient in description of the particular land sought to be conveyed; definitely furnishing numerous keys by which it might be identified with certainty; 38 Tex.Jur. 683; see Fisher v. Wilson, Tex.Civ.App., 185 S.W.2d 186, affirmed 144 Tex. 53, 188 S.W.2d 150, and authorities there cited; also Burris v. Hastert, supra, with further citations, holding that "if the description is sufficient to designate the property to be conveyed, when its location on the ground is established by parol evidence, then the contract is not void for failure to describe the real property. That is certain which can be made certain."

Consistent with above conclusions, the judgment under review is reversed and judgment here rendered decreeing that appellant Abbott is entitled to the relief of specific performance of contract as prayed.

Reversed and rendered.