Margaret G. GIBSON et vir., Appellants,

v.

Fred TURNER, Jr., et al., Appellees.

No. 3119.

Court of Civil Appeals of Texas.

Eastland.

Jan. 14, 1955.

Rehearing Denied Feb. 11, 1955.

Gov. Dan Moody, Charles L. Krueger, Austin, for appellants.

Stubbeman, McRae & Sealy, Midland, Neill, Blanks, Lewis & Logan, San Angelo,

Graves, Dougherty & Greenhill, Austin, Cox, Brown & Daniel, Temple, Cox, Patterson & Smith, San Antonio, for appellees.

COLLINGS, Justice.

This suit involves the construction of the royalty clause of an oil and gas lease. The Gresham family owned an undivided ¼th, or ¹⁰⁄₄₀ths fee interest in the minerals on the land involved. Plaintiff, Margaret G. Gibson is a member of such family and owned ¹⁄₁₀th of the Gresham family interest or ¼₀th of the entire mineral interest. She, joined by her husband and other members of the Gresham family, who, together with the said Margaret G. Gibson, owned a total of ⁹⁄₄₀ths undivided interest therein, executed an oil and gas lease, the material provisions of which are as follows:

"This agreement, made this 17 day of February, 1947, between Willie E. Gresham, a widow, Chambliss Gresham, Mary Katherine Gresham, a feme sole, Elizabeth G. Moore and husband, Chas. M. Moore, and Margaret G. Gibson and husband, Ben D. Gibson, Lessor (whether one or more), and Fred Turner, Jr., Lessee, Witnesseth:

"1. Lessor in consideration of ten and no/100 dollars ($10.00), in hand paid, of the royalties herein provided, and of the agreements of Lessee herein contained, hereby grants, leases and lets exclusively unto Lessee for the purpose of investigating, exploring, prospecting, drilling and mining for and producing oil, gas and all other minerals, laying pipe lines, building tanks, power stations, telophone lines and other structures thereon to produce, save, take care of, treat, transport and own said products, and housing its employees, the following described land in Upton County, Texas, to-wit:

"All of survey No. 14, certificate No. 3802, block 4½, GC & SF Railway Company survey, containing 922 acres, more or less. (a) As a part of the consideration herein, lessors except herefrom and reserve unto themselves, their heirs, assigns and successors in title, an undivided ¹⁄₁₆ of ⅞ of the first oil and gas produced, saved and sold from said premises under this lease, if, as and when produced, saved and sold, free and clear of all cost of development or production until there shall have been produced, saved and sold to the credit of said reserved interest, oil and/or gas of the market value of $5,186.25 at the current market price at the time and place of production; upon retirement of the said mineral reservation amount, that fractional production interest hereinabove reserved by lessors and allocated to retirement of said reservation amount shall cease and such reserved interest shall become vested in lessee or his successors in title; the reserved interest allocated to retirement of said mineral reservation amount shall have the legal status of an over-riding royalty so long as the said interest exists and it shall bear is own ad valorem and gross production taxes; lessee is not and shall not be personally liable for said reservation amount which shall be payable only out of that fractional production interest hereinabove specified so that should this lease terminate for any cause prior to complete retirement of said reservation amount, the said reservation amount and the interest reserved for its retirement shall also terminate and become of no further force or effect.

\* \* \* \* \* \*

"3. The royalties to be paid lessor are: (a) on oil, one-eighth of that produced and saved from said land, the same to be delivered at the wells or to the credit of lessor into the pipe line to which the wells may be connected; Lessee may from time to time purchase any royalty oil in its possession, paying the market price therefor prevailing for the field where produced on the date of purchase; (b) on gas, including casinghead gas or other gaseous substance, produced from said land and sold or used off the premises or in the manufacture of gasoline or other products therefrom, the market value at

the well of one-eighth of the gas so sold or used, provided that on gas sold at the wells the royalty shall be one-eighth of the amount realized from such sale; where gas from a well producing gas only is not sold or used, Lessee may pay as royalty $50.00 per well per year, and upon such payment it will be considered that gas is being produced within the meaning of paragraph 2 hereof; and (c) all other minerals mined and marketed, one-tenth either in kind or value at the well or mine, at lessee's election, except that on sulphur the royalty shall be fifty cents (50¢) per long ton. Lessee shall have free use of oil, gas, coal, wood and water from said land, except water from lessor's wells, for all operations hereunder, and the royalty on oil, gas and coal shall be computed after deducting any so used. Lessor shall have any gas well on said land for stoves and inside lights in the principal dwelling thereon out of any surplus gas not needed for operations hereunder.

"9. Lessor hereby warrants and agrees to defend the title to said land and agrees that lessee at its option may discharge any tax, mortgage, or other lien upon said land and in event Lessee does so, it shall be subrogated to such lien with the right to enforce same and apply rentals and royalties accruing hereunder toward satisfying same."

Margaret G. Gibson, joined by her husband, Ben D. Gibson, brought this suit against her co-lessors in said land and Fred Turner, Jr., lessee, and his assignees and co-owners of the total leasehold interest, seeking a declaratory judgment construing the lease to provide and mean that Fred Turner, Jr., his assigns and co-owners of the working interest under the lease, are by its terms obligated to pay to Margaret G. Gibson as royalty $\frac{1}{72}$nd of the oil and gas or the value thereof produced and saved from the lands described in said lease, that is, that she should be paid that proportion of $\frac{1}{8}$th of the oil produced and saved from the land described in the lease, and that proportion of $\frac{1}{8}$th of the gas sold or used

off said premises which the interest ($\frac{1}{40}$th) owned by plaintiff, Margaret G. Gibson, in the mineral estate in the land bore to the total interest ($\frac{9}{40}$ths) owned by her and her co-lessors in such mineral estate.

It was urged in the pleadings of the defendants, Fred Turner, Jr., and his assignees, that, although the lease executed by Margaret G. Gibson and her co-lessors purported to cover the entire mineral interest in the tract described and warranted the title thereto, the grantors in said lease actually owned only $\frac{9}{40}$ths of the minerals therein and Margaret G. Gibson owned only $\frac{1}{40}$th of such total mineral interest; that the lease provided as part of the consideration therefor, that lessors should receive $\frac{1}{8}$th of all the oil produced from the land covered by the lease; that since the title had failed except as to $\frac{9}{40}$ths of the mineral interest purported to be conveyed, the consideration should be abated in proportion to the part of the title that had failed; that Margaret G. Gibson was therefore entitled to receive only $\frac{1}{40}$th of the $\frac{1}{8}$th royalty provided by the lease, or $\frac{1}{320}$ths of the oil and gas so produced and saved.

The trial was before the court without a jury and judgment was entered in accordance with the defendants' contention that Margaret G. Gibson was entitled to receive only $\frac{1}{40}$th of the full $\frac{1}{8}$th royalty interest in the land described. Margaret G. Gibson, joined by her husband, has appealed.

The points upon which appellants' appeal is predicated are:

"First Point: The trial court erred in holding that under the terms of the lease appellant Margaret G. Gibson owned a royalty of only $\frac{1}{320}$ of the oil produced and saved from the land, and only a $\frac{1}{320}$ of the market value at the well of the gas, casinghead gas and other gaseous substances produced from said land and sold or used off of the premises in the manufacture of gasoline or other products therefrom.

"Second Point: The trial court erred in refusing to hold that Margaret G. Gibson owned a royalty of $\frac{1}{72}$ of the oil

produced and saved from the land, and a ¹⁄₃₂nd of the market value at the well of the gas, casinghead gas and other gaseous substances produced from said land and sold or used off of the premises in the manufacture of gasoline or other products therefrom."

The pertinent provisions of the royalty clause of the lease are as follows:

"The royalties to be paid lessor are: (a) on oil, ⅛th of that produced and saved from the land, * * * (b) on gas, * * * produced from said land * * * the market value * * * of ⅛th of the gas so sold or used * * * and (c) all other minerals mined and marketed ¹⁄₁₀th either in kind or value at the well or mine * * *."

There is no ambiguity on the face of the lease concerning either the description of the mineral interest conveyed or the royalty to be paid to the lessors therein. The lease, in plain and unambiguous language, purports to convey the entire mineral interest in survey No. 14, as a part of the consideration therefor, provides for the payment to the lessors of ⅛th royalty on oil produced from "said land."

It appears, however, that the lessors did not own the entire mineral interest in survey No. 14 but owned and actually conveyed only a ⁹⁄₁₀ths interest therein, and that the title has failed except as to the ⁹⁄₁₀ths interest actually conveyed.

■ Ordinarily, where there is a covenant of warranty and the title fails as to any part of the purported conveyance, the vendee is entitled to a reduction of the consideration in proportion to the failure of title. Langley v. Norris, 141 Tex. 405, 173 S.W.2d 454, 148 A.L.R. 555; Puckett v. Hoover, 146 Tex. 1, 202 S.W.2d 209, 212; Jones v. English, Tex.Civ.App., 268 S.W.2d 686, affirmed Tex., 274 S.W.2d 666. Our Supreme Court has further held that a grantee in an oil and gas lease who did not acquire complete dominion over the leasehold estate purported to be conveyed with covenant of warranty, was entitled to recover that proportion of the consideration

as the value of the part to which title fails bears to the whole, even though the grantee had or was charged with knowledge of the servitude or defect in title when he acquired the lease. City of Beaumont v. Moore, 146 Tex. 46, 202 S.W.2d 448. The rule announced in the last cited case is persuasive in the instant case.

We cannot agree with appellants' contention that this case is controlled by the holding in Rancho Bonito Land and Livestock Company v. North, 92 Tex. 72, 45 S.W. 994, to the effect that a vendee cannot recover damages for breach of warranty unless he has been actively or constructively evicted. This is a suit for the construction of the oil and gas lease and not for damages for breach of warranty or for specific performance. The technical rules that govern in such cases are not here applicable.

■ By the terms of the lease, lessors purported to convey a leasehold estate covering all the minerals under Survey No. 14, which contained 922 acres, and Turner agreed to pay a ⅛th royalty on the oil produced therefrom. From the language of the lease it cannot be said that the lessors' obligation was to convey less than the entire mineral interest in Survey No. 14, or that it was the intention of the parties that Turner should pay a ⅛th royalty on the entire mineral interest in the event lessors conveyed a smaller interest than that provided. The lease does not by express language state the intention of the parties in regard to the consideration in such a contingency, but it would be manifestly unfair and inequitable to require Turner and his assignees to strictly comply with Turner's obligation to pay the full consideration provided by the executory lease contract for the minerals when the lessors have actually conveyed only ⁹⁄₁₀ths of the total mineral interest which they purported to convey. The provision for payment of a ⅛th royalty on all the minerals was based upon a conveyance of all the minerals. To prevent an inequitable result it should, if the terms of the lease permit, be implied that the parties intended a proportional reduction in the

royalty payment when the interest or thing conveyed was less than that purported. Such a construction is consistent with all the terms of the lease and there is nothing in the lease which refutes or is contrary to such an intention.

Appellants say, however, that at the time of the execution of the lease, Fred Turner, Jr., not only knew that lessors owned only a 9/40ths interest in the minerals under Survey No. 14 but that he and the Plymouth Oil Company owned and held oil and gas leases covering the remaining 31/40ths interest in the minerals not owned by such lessors. They urge that under these facts, and others hereinafter set out, it should be held that it was the intention of all parties to the lease that a 9/40ths interest and only that interest in the minerals under Survey No. 14 should be covered by the lease. They further urge that the fact that only a 9/40ths interest was actually conveyed when the lease purported to cover the entire mineral interest should not effect Turner's obligation to pay a 1/8th royalty on the whole interest.

■ As previously indicated, it is our opinion there is no ambiguity in the lease covering either the description of the mineral interest conveyed or the royalty to be paid lessor. In the absence of ambiguity or of fraud, accident or mistake, which are not in the case, surrounding facts and circumstances are not admissible for consideration in construing the lease and in determining the intention of the parties in regard thereto.

If, however, it should be held that there is ambiguity in the lease as to the land intended to be conveyed or as to the amount of royalty provided, when the language of the lease is considered in connection with the fact that only a 9/40ths interest was actually conveyed and that Turner apparently knew that lessors owned only 9/40ths of the minerals, since he and the Plymouth Oil Company owned the leasehold estate in the remaining 31/40ths, it is our opinion that a proper construction of the lease would still require a holding that appellees are entitled to reduce their royalty payments in the pro-

portion that the mineral interests not actually conveyed bear to that purported to be conveyed by the lease.

■ There is no question but that the parties to an oil and gas lease may contract for the payment to the lessor as royalty of any desired fractional royalty interest. Benge v. Scharbauer, Tex., 259 S.W.2d 166, 169.

In support of their contention that a royalty of 1/8th of the oil produced from Survey No. 14 was intended, although only 9/40ths of the leasehold estate was conveyed, appellants urge the fact that upon the execution and delivery of the lease by Mrs. Gibson and her co-lessors, appellee, Fred Turner, Jr., acquired the only then outstanding leasehold interest in the oil, gas and mineral leasehold estate in the land. They further urge that in the blank form of the lease used there was a clause which provided for proportionate payment of royalties and rentals in case the interest of the lessors was less than the entire fee simple title, but that such clause was struck from the lease before its execution. These facts, although consistent with the contention that the parties intended lessors should receive a 1/8th royalty of all oil produced from Survey No. 14, are not controlling if considered together with all the facts and circumstances in this case.

■ Courts will take judicial knowledge of the fact that 1/8th of the oil produced, saved and sold from land conveyed by the oil and gas lease is the usual and customary royalty interest provided for the lessor. Cheek v. Metzer, 116 Tex. 356, 291 S.W. 860, 862; Leonard v. Prater, Tex.Com. App., 36 S.W.2d 216, 220, 86 A.L.R. 499.

At the time of the execution of the oil and gas lease the land involved was not in a highly developed or proven area but was nine miles from any producing oil or gas well. This fact is inconsistent with a holding that it was the intention of the parties to contract for a greater royalty than that which is customary and no unusual circumstances are shown which would require such a holding.

The lease clearly purports to cover survey No. 14 without any limitations or restrictions. The description in the granting clause covered $^{40}\!/\!_{40}$ths of the oil and gas under such survey. The interest acquired by Turner under the lease was $^{9}\!/\!_{40}$ths of the oil and gas under such tract. Appellants urge that at the time of the execution of the lease appellees owned the leasehold interest in the remaining $^{31}\!/\!_{40}$ths of the minerals in question and appellee Turner, therefore, knew that such mineral interest was not owned by lessors. They urge that, in spite of the clear language of the lease to the contrary, it was actually intended by all the parties that the lease should convey only a $^{9}\!/\!_{40}$ths interest in the minerals in Survey No. 14. They then say that the language of the lease to the effect that "royalties to be paid lessor are: (a) on oil, $^{1}\!/\!_{8}$th of that produced and saved from *said land*" (emphasis ours) means $^{1}\!/\!_{8}$th of $^{40}\!/\!_{40}$ths of the oil produced from Survey No. 14. While not pleading fraud, accident or mistake, appellants seek to show that in spite of the language indicating a conveyance of a leasehold interest in $^{40}\!/\!_{40}$ths of the minerals, the parties actually intended to convey a leasehold interest in only $^{9}\!/\!_{40}$ths of the minerals. They then urge the court to hold that the "said land" as used in the royalty clause means $^{40}\!/\!_{40}$ths of the minerals instead of the $^{9}\!/\!_{40}$ths actually conveyed and which they say was all that was intended to be conveyed. Under these facts and circumstances, "said land", as used in the royalty clause, in our opinion, should be held to refer to the same land conveyed, or intended to be conveyed, in the granting clause of the lease. The "said land" should not be held to mean $^{9}\!/\!_{40}$ths of the minerals in the portion of the lease determining what land or interest therein was intended to be conveyed and then to mean $^{40}\!/\!_{40}$ths of the minerals in determining the royalty to be paid, unless that intention is plainly manifest. We find nothing in the lease nor do we find anything in the surrounding facts and circumstances to require such a holding. The trial court properly held that the royalty payable under the lease is $^{1}\!/\!_{8}$th of $^{9}\!/\!_{40}$ths of the oil produced and saved from Survey No. 14 and that the royalty payable to appellants is $^{1}\!/\!_{8}$th of $^{9}\!/\!_{40}$th of such production.

The judgment of the trial court is affirmed.