**Joseph Ward JOHNSON et ux., Appellants,**

**v,**

**Mary L. SNELL, Appellee.**

**No. 733.**

Court of Civil Appeals of Texas, Corpus Christi.

Dec. 29, 1972.

Rehearing Denied Jan. 18, 1973.

Atlas, Hall, Schwarz, Mills, Gurwitz & Bland, Asa V. Bland, McAllen, for appellants.

Jones, Flores & Yzaguirre, J. Perry Jones, McAllen, for appellee.

## OPINION

SHARPE, Justice.

This is a suit for specific performance of a contract to sell real property brought by Dr. Joseph Ward Johnson and his wife, Darlene Jean Johnson, vendees, against Mary L. Snell, vendor, and additionally for consequential damages due to the alleged wrongful withholding of the property in question. From a judgment based upon an instructed verdict in favor of Mary L. Snell that plaintiffs take nothing, Joseph Ward Johnson and Darlene Ward Johnson appeal.

Appellants assert two points of error, in substance, that the trial court erred (1) in granting an instructed verdict on the ground that there was "no meeting of the minds" for the reason that if the minds of the parties did not meet it was due to unilateral mistake of appellees and (2) that there was no "uncertainty" of the terms of the contract for the reason that all the essential terms of the contract were reasonably certain and the total consideration of the sale of the realty could be rendered certain by a mere mathematical calculation.

Except for the acknowledgments, the contract involved reads as follows:

"THE STATE OF TEXAS ⎫
COUNTY OF HIDALGO ⎭

THIS CONTRACT AND AGREEMENT made and entered into on this the *17th day* of February, 1971, by and between Mary L. Snell of Hidalgo County, Texas, hereinafter styled Seller, and Joseph Ward Johnson and wife, Darlene Jean Johnson of *Dallas* County, Iowa, hereinafter styled Purchasers;

WITNESSETH:

Seller is the owner of:

Lots 2 and 3 and the West 203 feet of Lot 4 in Twilight Park Subdivision, an addition to the City of Edinburg, Hidalgo County, Texas, according to the map or plat thereof on file and of record in the office of the County Clerk of Hidalgo County, Texas, to which reference is hereby made for all purposes;

on which there is situated a Trailer Park and a store building, which Seller has agreed to sell and Purchasers have agreed to purchase for the consideration of $15,000.00 cash and the execution by the Grantees of a promissory vendor's lien note payable monthly in installments

of $250.00 per month, beginning on the first day of the month after the date of closing and a payment on the first day of each month thereafter, continuing for 15 years, said note to bear interest at the rate of 6% per annum, included in said monthly payment, said note being payable on or before its maturity date.

Purchasers have deposited with Seller the sum of $1,000.00 to guarantee faithful performance of this contract and the transaction shall be closed on or before October 1, 1971, and the remaining sum of the cash payment, being a balance of $14,000.00, shall be paid on that date.

Seller agrees to furnish to Purchasers or their attorneys a Guaranty Title Insurance Policy, on the closing of this transaction, in the amount of $50,000.00, same to be issued after the Deed has been recorded and title policy fees paid, and within 30 days from date, Seller agrees to furnish to Purchasers or their attorneys a commitment for a Title Policy, to be issued through a reputable Title Insurance Company doing business in the State of Texas, committing to issue the Title Policy above mentioned; and if Seller complies with her agreement and furnishes said title commitment and Purchasers fail or refuse to perform their contract by paying the balance of the down payment and executing the note and deed of trust as herein provided, then the escrow shall be forfeited to the Seller as liquidated damages.

Seller and Purchasers agree that Seller will pay $200.00 toward the Title Insurance Policy and Purchasers will pay the excess and that the other closing expenses, including any penalty that has to be paid in order to prepay the existing loan on said property, will be divided equally between the Seller and the Purchasers.

On closing, Seller will furnish to Purchasers a good and sufficient Warranty Deed covering said property and reserving a vendor's lien to pay the payments of $250.00 per month over a term of 15 years, including interest, and shall deliver possession of said property to Purchasers. Taxes and insurance for the year 1971 shall be prorated as of the date of closing.

Any personal property on said premises shall be reserved by Seller.

WITNESS OUR HANDS to duplicate originals on the day and year first above written.

/s/ Mary L. Snell
———————————————
Mary L. Snell

SELLER

/s/ Joseph Ward Johnson
———————————————
Joseph Ward Johnson

/s/ Darlene Jean Johnson
———————————————
Darlene Jean Johnson

PURCHASERS"

When the plaintiffs rested, the defendant moved for an instructed verdict. The trial judge in granting the instructed verdict stated two reasons as follows:

" . . . the two grounds I granted it on, I don't believe the contract is specific enough so that we could grant specific performance, it is so vague and indefinite. And the other thing, I believe as a matter of law there just wasn't any meeting of the minds, from what the parties testified."

We affirm the judgment of the trial court which denied relief to appellants.

 The settled rule is that relief by way of specific performance is a determination that rests in the sound discretion of the trial court, and its action will not be disturbed on appeal unless an abuse of discretion is shown. The court's discretion is controlled by the established doctrines and principles of equity, and may not be capriciously and arbitrarily exercised. The relief will be granted or withheld by the Court upon a consideration of all the cir-

cumstances of each particular case, and no definite rule has been announced by which the action of the court can be determined in all cases. See Bergstedt v. Bender, 222 S.W. 547 (Tex.Comm.App., 1920, Judg. app.); 52 Tex.Jur.2d, Specific Performance, § 21, p. 541, and cases therein cited.

Appellee's basic contentions may be summarized as follows: That the alleged contract here involved is so vague, incomplete and lacking in provisions which are material and necessary to the final consummation of the sale that specific performance is precluded; that there was not such a meeting of the minds as would constitute a binding contract; that the contract does not recite a purchase price for the property; nor does it provide for the amount of the vendor's lien note or for its other provisions, including the place of payment; nor does it provide for any of the terms which would be included in a deed of trust, including designation of a trustee, although the contract in one place only refers to a "deed of trust as herein provided"; that because of such basic deficiencies and lack of fundamental provisions that in order to decree specific performance the court would virtually be required to write a contract for the parties, which it is not authorized to do. We are in general agreement with the contentions of appellee.

On the trial of the case the evidence consisted of the testimony of Joseph Ward Johnson, one of the appellants, and that of Mary L. Snell, appellee, along with three exhibits, i. e., the contract, hereinabove set out, a check for $1000.00 earnest money, and a title insurance rate schedule.

Dr. Johnson testified, among other things, in substance, as follows: That he and his wife discussed the proposed sale with Mrs. Snell but that Mrs. Snell would not give them a price; that Mrs. Snell told the Johnsons that she previously had some dealings with an attorney and she would contact him about drawing the contract. The parties went to the attorney's office the next day and there discussed the sale with him. Dr. Johnson said that when Mrs. Snell was asked about the amount of the purchase price she said it was either $80,000.00 or $60,000.00; that he and his wife disagreed on the amount. After further conversation the contract was drafted. Dr. Johnson also testified that his wife understood Mary Snell to state the price of the property was $80,000.00 and that he thought Mary Snell agreed to the price of sixty thousand; and that it was agreed to have the contract written with a down payment of $15,000 and to carry the balance over a 15 year period with payments of $250 per month. Dr. Johnson further testified the $250 per month payment would be allocated proportionally between reduction of principal and the 6% interest, which he testified meant that the total purchase price was to be determined based on an amortization schedule. Mary Snell testified that she understood they agreed to a purchase price of sixty thousand dollars, fifteen thousand in cash and six per cent interest on the balance of forty-five thousand dollars, assuming that adding the interest on the selling price over the note's term would bring the total to about eighty thousand dollars. Dr. Johnson said that he did not know what was meant by a deed of trust. Dr. Johnson, by use of an amortization table concluded that the balance of the purchase price was to be $29,621.00 after the fifteen thousand dollar payment. Two days later, on February 17, 1971, Dr. Johnson, his wife and Mary Snell again met in the attorney's office. A secretary brought the paper and the parties signed it. They gave Mary Snell $1,000 as earnest money. The Johnsons then returned to their home in Iowa where they were then residing.

Thereafter, the attorney prepared additional papers and sent them to the Johnsons. Dr. Johnson said he discovered or concluded that there was a misunderstanding as to the exact terms of the contract. This was about July, 1971. The papers which were tendered to the Johnsons are not in evidence. After it appeared that there was a difference of opinion concerning the terms of the contract the Johnsons did not have any further dealings with

Mrs. Snell, although the attorneys for the parties may have dealt with each other.

■ To obtain the remedy of specific performance our Courts have often held that the contract must be of greater certainty respecting terms and conditions than required in law, since this is an equitable remedy. Mulkey v. Allen, 36 S.W.2d 198 (Tex.Comm.App.1931, judgmt. app.); Burr v. Greenland, 356 S.W.2d 370 (Tex.Civ. App.—El Paso 1962, ref'd n. r. e.); Langley v. Norris, 141 Tex. 405, 173 S.W.2d 454 (1943). A contract to be specifically enforced must be complete and certain even though absolute certainty is not required. Wilson v. Fisher, 144 Tex. 53, 188 S.W.2d 150 (1945); Brevard v. King, 400 S.W.2d 576 (Tex.Civ.App.—Austin 1966, ref'd n. r. e.).

In Bryant v. Clark, 163 Tex. 596, 358 S.W.2d 614 (1962), the court had before it the question as to whether the terms of a written contract for the conveyance of real estate were sufficiently certain and definite to warrant the remedy of specific performance. The court affirmed judgments of the lower courts denying that relief and held in part as follows:

"In Langley v. Norris, 141 Tex. 405, 173 S.W.2d 454, 148 A.L.R. 555, cited by petitioner, we said that absolute certainty is not necessary, but that 'the certainty required in a contract which renders it subject to an action for specific performance is a reasonable certainty.' That case turned upon the construction of the language used in the written contract, rather than upon the question, as here, whether any material and basic elements of the contract are wanting. . . .

\* \* \* \* \* \*

The authorities generally concur in the rule announced in Wilson v. Fisher, 144 Tex. 53, 188 S.W.2d 150, although in that case the lack of certainty was with reference to the description of the property, as follows:

'In the absence of equities removing the case from the operation of the statute of frauds, which do not here exist, it is well settled that before a court will decree the specific performance of a contract for the sale of land, or entertain a suit for damages for the breach thereof, the written agreement or memorandum required by the statute must contain the essential terms of a contract, expressed with such certainty and clarity that it may be understood without recourse to parol evidence to show the intention of the parties; \* \* \*'

Pomeroy in his Specific Performance of Contracts, 3rd ed. (1926), § 159, states the rule with regard to the certainty required for specific performance to be:

'\* \* \* its object is to procure a performance by the defendant, and this demands a *clear, definite, and precise understanding* of all the terms; they must be exactly ascertained before their performance can be enforced \* \* \*'

Restatement of the Law, Contracts, § 370, states the rule as follows: 'Specific enforcement will not be decreed unless the terms of the contract are so expressed that the court can render with reasonable certainty what is the duty of each party and the conditions under which performance is due.'

We are of the opinion that the contract in question is too indefinite and uncertain to authorize a judgment of specific performance."

In O'Neil v. Powell, 470 S.W.2d 775 (Tex.Civ.App.—Fort Worth 1971, writ ref'd n. r. e.), where the plaintiff sought specific performance of a contract for sale of real property and alternatively damages for breach thereof, a summary judgment denying such relief was affirmed. The contract was found indefinite, among other reasons, because it did not specify the man-

ner by which interest was to be calculated, when and where interest was to be paid, and had no provisions with respect to security for the deferred payments. The court held in part as follows:

"A review of the terms and provisions of the contract here involved clearly show that the contract is incomplete because many of the essential terms thereof had not been resolved by the parties to it and because of the lack of essential parties to the contract. There was no meeting of the minds of such parties on material matters. The agreement left such material matters open for future adjustment and agreement.

It is settled law that such a contract is not binding upon the parties to it and therefore it cannot be enforced. Gasperson v. Madill National Bank, 455 S.W.2d 381, 387 (Fort Worth, Tex.Civ. App., 1970, ref., n. r. e.) and authorities cited."

■ In the instant case the contract does not set out a sales price for the property in question. Appellants contend in substance that such sales price could be made certain by the use of an amortization table and ratios which would amount to the sum of $44,621.00, of which $15,000.00 was to be paid in cash, leaving a balance of $29,621.00 to be paid in installments of a vendor's lien note. Appellee's position is that the sales price was $60,000.00, of which $15,000.00 was to be paid in cash and the balance of $45,000.00, plus interest, to be evidenced by the installment vendor's lien note. We believe from a consideration of all the evidence that there actually never was a meeting of the minds concerning the final purchase price of the property. However, we need not rest our decision of affirmance on that ground. Under the authorities above cited we hold that the trial court was not required to grant specific performance of the alleged contract. It was incomplete because many of the essential terms of the transaction had not been resolved by the parties and there was not any meeting of the minds on material matters, which were left open for future adjustment and agreement.

The contract in question, among other things, provided that appellants would execute a "deed of trust as herein provided". There are no provisions in the contract relating to the terms of a deed of trust. By way of example, nothing is said in the contract about the deed of trust containing provision for a power of sale or foreclosure, nor concerning taxes or insurance or default in performance of obligations of the purchasers. The trial court was not required to write a deed of trust for the parties under such conditions. The contract also does not set out sufficient guidelines for the provisions of a vendor's lien note; nor does the other evidence supply such deficiencies. The place of payment of the note is not provided for and a sufficiently definite method for calculation of interest payments and application thereof is not furnished. The evidence shows that at the time of the contract the appellants lived in the State of Iowa and appellee lived in Hidalgo County, Texas. The trial court also was not required to supply these deficiencies by granting specific performance.

Under the conditions stated the trial court correctly refused to grant specific performance of the agreement, the basic relief sought by appellants. Appellants' points are overruled.

The judgment of the trial court is affirmed.