**ABRAHAM INVESTMENT COMPANY, Appellant,**

v.

**PAYNE RANCH, INC., David P. Payne and Nona S. Payne Foundation, Inc., J.W. Campbell, Maltese Cross Cattle Company, John Blake O'Brien, and W.H. O'Brien, Appellees.**

No. 07–96–0298–CV.

Court of Appeals of Texas, Amarillo.

April 28, 1998.

Rehearing Overruled June 2, 1998.

---

Joe L. Lovell, Garner, Lovell & Stein, Amarillo, for Appellant.

Bill W. Waters, Waters, Holt & Fields, Pampa, Joe W. Hayes, Templeton, Smithee, Hayes & Fields, Amarillo, for J.W. Campbell.

Robert H. Smith, Smith & Stone, Amarillo, for Payne Ranch.

Roger S. Cox, Sanders, Baker & Jesko, Amarillo, P. Michael Jung, James K. Peden, Strasburger & Price, Dallas, for Maltese, O'Briens.

Before BOYD, C.J., REAVIS, J., and REYNOLDS, Senior Justice.*

## ON MOTIONS FOR REHEARING

BOYD, Chief Justice.

J.W. Campbell (Campbell), the Maltese Cross Cattle Company (Maltese Cross), John Blake O'Brien, and W.H. O'Brien filed motions for rehearing. Their motions are granted and our opinion of March 5, 1998, is withdrawn and the following is substituted.

In nine points, appellant Abraham Investment Company (AIC) challenges a summary judgment in favor of Campbell, Maltese

---

* Charles L. Reynolds, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

Cross, and William Alexander O'Brien, Katherine Elizabeth O'Brien, John Blake O'Brien, and W.H. O'Brien (the O'Briens),[1] all of whom are known hereafter collectively as appellees. In its nine points, AIC argues the trial court erred in granting summary judgment in favor of appellees, in denying its motion for partial summary judgment, and in awarding attorney fees to Maltese Cross.

Our discussion requires a rather detailed recitation of the complicated procedural and factual history of the transactions giving rise to this appeal. AIC brought suit against Payne Ranch, Incorporated (PRI), the David D. Payne and Nona S. Payne Foundation,[2] hereinafter known as the Payne Entities, Campbell, Maltese Cross, and the O'Briens as partners in Maltese Cross. In the suit, AIC alleged breach of contract, trespass, undue influence, tortious interference, violation of the Deceptive Trade Practices Act (DTPA), fraud in a real estate transaction, and civil conspiracy. As remedies for those alleged malefactions, AIC sought a constructive trust, specific performance, a declaratory judgment, tort damages and, in the alternative, breach of contract damages.

In addition to their general and specific denials, Campbell and Maltese Cross asserted affirmative defenses, counterclaims seeking a declaratory judgment to remove all clouds on its superior title, costs and attorney's fees. Campbell additionally filed a third party claim against Malouf Abraham, Salem Abraham, Eddie Abraham, and Jason Abraham, as partners in AIC, in which he sought the same relief he requested in his counterclaim against AIC. In addition to denying AIC's allegations against them, John Blake O'Brien and W.H. O'Brien alleged affirmative defenses. Additionally, W.H. O'Brien, by a verified denial, asserted he was not a partner in Maltese Cross.

Subsequent to the pleading, appellees filed independent summary judgment motions and AIC sought a partial summary judgment. Ultimately, the trial court granted summary judgment awarding the fee simple title to

Campbell and attorney's fees to Maltese Cross. Hence, this appeal.

The subject matter of this suit revolves around the sale of the Payne Ranch, a 12,000-acre tract located in Roberts County. Campbell had been leasing the tract since the late 1950's. By a March 24, 1988 letter (hereafter the March 24 letter), the owners of the ranch, the Payne Entities, granted Campbell the following preferential right to purchase the ranch:

> This letter is written for the purpose of giving to you the preferential right of purchase of the property described in the attached Exhibit "A" in the event of a sale of such property. You hold a five-year grazing lease on such property effective December 1, 1987, subject to termination on one year's notice in the event of a sale of such property.

Also occurring on March 24, 1988, Campbell signed a lease of the ranch with an effective date of December 1, 1987.

Several years later, on March 1, 1991, AIC and the Payne Entities reached an agreement for the sale of the ranch. AIC asked Carolyn Carlson (Carlson) to draft a contract for the sale. While drafting the contract, Carlson discovered that Campbell had a preferential right for the purchase of the ranch and notified AIC of this right. AIC then withdrew its offer to purchase the ranch.

On March 4, 1991, AIC renegotiated with Payne Entities and reached an agreement. A written contract for the sale of the Payne Ranch, hereinafter known as the AIC contract, was created. That contract provided that AIC was to pay $35,000 when it signed the contract, and to pay the remainder of $673,540 by cashier's check by 3:00 p.m. on March 5, 1991. The contract specifically provided, however, that "[t]his Contract of Sale is subject to the preferential right of purchase heretofore granted to J.W. Campbell on the 24th of March, 1988."

During the morning while the AIC contract was being prepared, J.W. Gordon

---

1. Of the O'Brien's, only W.H. and John O'Brien remain within the lawsuit because AIC later nonsuited William Alexander and Katherine Elizabeth O'Brien.

2. The Payne Ranch was originally owned by Payne Ranch, Inc. and the Estate of Nona Payne. After Nona Payne's estate was closed, the Payne Foundation was substituted in this suit.

(Gordon), President of PRI, gave a letter (hereafter the March 4 letter)[3] to Campbell informing him that the ranch had been sold to AIC, and enclosed a copy of a proposed contract from the prior negotiations. The letter stated that Campbell had "a preferential right to purchase the ranch upon the same terms," and notified him that if he wanted to exercise his preferential right of purchase, he must sign the letter and return it within 20 days. Above the place indicated for Campbell's signature was the following statement: "I want to exercise my preferential right to purchase the Payne Ranch upon the terms set forth in the enclosed contract of sale."

Shortly after the AIC contract was signed, Campbell received another notice letter with the AIC contract attached. Unsettled by the existence of two offers, Campbell met with Gordon and Rex McKay, a close friend of Gordon. At the beginning of the meeting, Campbell verbally expressed his intention of exercising his preferential right of purchase. Then, Campbell and Gordon began discussing what Gordon was going to do with the proceeds of the sale. Gordon indicated that he would put the money in certificates of deposit which would earn about a 6% interest rate. Campbell then suggested that he pay $35,000 down and finance the remaining balance for a six-month period at a 12% interest rate. Gordon verbally agreed to those terms. At the end of the meeting, Campbell signed the second notice letter. The following morning, Gordon executed a warranty deed from the Payne Entities to Campbell in exchange for a $35,000 down payment and the execution of a $673,540 vendor's lien note.

On March 22, 1991, Campbell signed and returned the March 4 letter to Gordon. Also about that time, Campbell entered into an agreement with Maltese Cross for a $1,000,-000 loan secured by the Payne Ranch and bank stock. In addition, Campbell gave Maltese Cross possessory rights to the ranch and the option of purchasing the ranch upon the conclusion of this lawsuit in exchange for

the forgiveness of $700,000 of the million dollar loan.

The role of an appellate court in the review of a summary judgment is axiomatic. To uphold a challenged summary judgment, we must find the movant proved there was no genuine issue of material fact and that "it (the movant) was entitled to judgment as a matter of law." *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex. 1985); Tex.R. Civ. P. 166a(c). In the case of a defendant-movant, he has the burden to prove either that one or more elements of the plaintiff's claims fail as a matter of law, or that one or more of his affirmative defenses is established as a matter of law. *Hennessey v. Vanguard Ins. Co.*, 895 S.W.2d 794, 797 (Tex.App.—Amarillo 1995, writ denied). Moreover, in deciding whether there is a disputed fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true, and every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon*, 690 S.W.2d at 548–49.

As a threshold matter, appellees argued in their summary judgment motion, as well as to this court, that AIC had no standing to bring this suit. Relying significantly on *Babu v. Jack and George Murdich, Inc.*, 141 A.D.2d 593, 529 N.Y.S.2d 356 (1988), they argue that inasmuch as AIC was not a party nor a third party beneficiary to the later agreement between the Payne Entities and Campbell (the Campbell agreement), it could not bring suit. Thus, they conclude, AIC cannot question the proper fulfillment of the preferential purchase agreement or the Campbell agreement. ·

On the other hand, AIC contends it has standing to bring this suit because the AIC contract was expressly subject to Campbell's preferential right of purchase. We agree. *See generally Texas Assoc. of Bus. v. Texas Air Control Board*, 852 S.W.2d 440 (Tex.1993) (discussing the principles of standing as a component of subject matter juris-

**3.** On March 4, two letters giving notice of the Payne Entities' intent to sell were drafted and given to Campbell. In the court's original opinion, we held that the second letter governed;

however, in light of the motions for rehearing, we now find that the first letter controls for reasons later discussed.

diction). Whether or not AIC was entitled to fulfillment of its contract was dependent upon whether Campbell properly exercised his preferential right to purchase. That being so, AIC clearly had standing to bring suit to determine that question.

Having determined that AIC has standing to bring its suit, it now becomes our duty to determine if the summary judgment was proper.

■ AIC's initial argument is that the judgment was improper, and to the contrary, it was entitled to its motion for partial summary judgment because Campbell did not properly exercise his preferential right. Thus, it reasons, its contract remained enforceable and the Payne Entities breached it by conveying title to Campbell. To sustain its breach of contract and declaratory judgment claims, AIC had the burden to show that 1) it had a valid, enforceable contract, 2) that it met or tendered performance of its contractual obligations, 3) that the Payne Entities breached their contractual obligations, and 4) that it suffered injury because of that breach which warranted relief. *Landrum v. Devenport,* 616 S.W.2d 359, 361 (Tex.Civ.App.—Texarkana 1981, no writ) (breach of contract); *Chumney v. Craig,* 805 S.W.2d 864, 866 (Tex.App.—Waco 1991, writ denied) (discussing burden of proof under the Uniform Declaratory Judgment Act).[4]

As we have noted, AIC's contract was expressly "subject to" Campbell's preferential purchase right. That provision was a condition subsequent. *See Rincones v. Windberg,* 705 S.W.2d 846, 848 (Tex.App.—Austin 1986, no writ) (citing Black's Law Dictionary and holding that a condition subsequent is a condition referring to a future event, upon the happening of which, the obligation becomes no longer binding upon the other party if he avails himself of that condition). Thus, the Payne Entities had a binding contractual obligation to convey legal title to AIC subject only, as material here, to Campbell's recognized right to purchase the land under the terms of his preferential right of purchase. In the process of determining if Campbell did properly exercise his right, we must consider the nature of preferential rights.

■ As a general concept, a preferential right of purchase, also known as a preemptive right or a right of first refusal, is a right granted to a party giving them the first opportunity to purchase property if an owner decides to sell it. *West Texas Transmission, L.P. v. Enron Corp.,* 907 F.2d 1554, 1561 (5th Cir.1990), *cert. denied,* 499 U.S. 906, 111 S.Ct. 1105, 113 L.Ed.2d 215 (1991); *Holland v. Fleming,* 728 S.W.2d 820, 822 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.); *Martin v. Lott,* 482 S.W.2d 917, 920 (Tex.Civ. App.—Dallas 1972, no writ). *See also* 1A Corbin on Contracts § 261 (1963). Preferential rights of purchase have a generally well-understood meaning within the business world that the rightholder must be given an opportunity to purchase the property from the property owner on the terms offered by any third party. *Gochman v. Draper,* 389 S.W.2d 571, 578 (Tex.Civ.App.—Austin 1965), *rev'd on other grounds,* 400 S.W.2d 545 (Tex. 1966). Consequently, as with all contractual rights supported by consideration, such rights are enforceable. *Henderson v. Nitschke,* 470 S.W.2d 410, 414 (Tex.Civ. App.—Eastland 1971, writ ref'd n.r.e.).

■ Once the property owner conveys the terms of the offer to the rightholder, the rightholder then has the power to accept or reject the offer. *Henderson,* 470 S.W.2d at 413 (citing 51C C.J.S. *Landlord and Tenant* § 88(5)). Thus, at the moment a property owner gives notice of his intent to sell, a preferential right "ripens" into an option. *Holland,* 728 S.W.2d at 822–23; *Henderson,* 470 S.W.2d at 412; *Sanchez v. Dickinson,* 551 S.W.2d 481, 484 (Tex.Civ.App.—San Antonio 1977) (citing 77 Am.Jur.2d *Vendor & Purchaser* § 49 (1975)). The terms of that option are formed by the provisions granting the preferential right and by the provisions within the notice-of-intent-to-sell given to the

---

4. Although a declaratory judgment may still be properly within the spirit of the Uniform Declaratory Judgments Act where there is another adequate remedy, it has been held that declaratory relief ordinarily will not be granted where the cause of action has fully matured and the action invokes an appropriate remedy at law. *Sylvester v. Watkins,* 538 S.W.2d 827, 831 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.).

rightholder. *Henderson,* 470 S.W.2d at 413–14. After the property owner has given his notice-of-intent-to-sell, he cannot change the terms of that offer as long as the option is binding upon the property owner. *West Texas Transmission, L.P.,* 907 F.2d at 1563 (citing *Sinclair Refining Co. v. Allbritton,* 147 Tex. 468, 218 S.W.2d 185, 188 (1949); *Holland,* 728 S.W.2d at 822–23; *Henderson,* 470 S.W.2d 410; 77 Am.Jur.2d *Vendor & Purchaser* § 49 (1975)). Finally, when the rightholder gives notice of his acceptance of the offer, a sale contract is created, even if it is stipulated in the agreement that a subsequent formal contract be executed. *Sinclair Refining Co.,* 218 S.W.2d at 188.

While the parties strenuously disagree whether Campbell properly exercised his right, they all recognize the existence and validity of that preferential right. Neither do they seriously dispute that if the right was properly exercised, Campbell was entitled to the conveyance of the Payne Ranch. Thus, the core dispute which we must resolve is whether the preferential right was exercised in such a manner as to obligate the Payne Entities to convey the property to Campbell, and thus terminate their obligations under the AIC contract.

 As we have noted, preferential rights of purchase have both a legal meaning and a common understanding within the business community. *Gochman,* 389 S.W.2d at 578. The holder of such a right has no right to compel a sale or to prevent a sale, but only has the right to be offered the property at a fixed price or at a price offered by a bona fide purchaser if and when the owner decides to sell. *West Texas Transmission, L.P.,* 907 F.2d at 1562; *Martin,* 482 S.W.2d at 922; *Henderson,* 470 S.W.2d at 413. Never has a preferential right been understood to mean the rightholder has the privilege to first negotiate with the seller. Indeed, an agreement to merely negotiate is unenforceable. *Scott v. Ingle Bros. Pacific, Inc.,* 489 S.W.2d 554, 555 (Tex.1972).

In their March 4 letter, the Payne Entities made an offer to sell the ranch to Campbell and provided that to exercise his right he was to sign and return the letter within 20 days. When they conveyed this letter,

Campbell's preemptive right matured into an irrevocable option. *Holland,* 728 S.W.2d at 822–23; *Henderson,* 470 S.W.2d at 412; *Sanchez,* 551 S.W.2d at 484. In this regard, appellees argue that because the March 24 letter extending the original preferential right of purchase did not require a particular manner of acceptance, Campbell was not bound to convey his acceptance in the manner specified in the March 4 letter but could convey his acceptance in any reasonable manner.

 However, the terms of an option are defined by both the provisions granting the right and the notice letter. *Henderson,* 470 S.W.2d at 413–14. By the terms of the offer included in the March 4 letter, Campbell was given the opportunity to purchase the ranch upon the same terms contained in the enclosed contract and was to convey his acceptance by signing and returning the March 4 letter. It is an established rule of contracts that when a specific mode of acceptance is given within an offer, the offeree must convey his acceptance in the precise mode expressed within the offer in order to create a binding agreement. *Town of Lindsay v. Cooke County Electric Coop. Ass'n,* 502 S.W.2d 117, 118 (Tex.1973), *cert. denied,* 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974). Thus, we must next determine if the record shows that Campbell intended to accept the terms offered within the March 4 letter and indicated his assent by signing and returning the letter.

 As we have discussed, the record reveals that after Campbell received the March 4 letter, he met with Gordon and McKay during the lunch hour to discuss the AIC contract. Although Campbell did orally communicate his acceptance of the offer to sell the ranch at the beginning of the discussion, under the terms of the offer, an oral acceptance was not sufficient. Thus, it was not sufficient to create an enforceable contract. *Cooke County Electric Coop. Ass'n,* 502 S.W.2d at 118.

 After his verbal acceptance, Campbell then began to inquire about the terms of the AIC contract. It is undisputed that Campbell next offered to give a note for the

remainder of the purchase price after payment of a $35,000 down payment bearing interest at the rate of 12% per annum and due six months after its execution. Gordon verbally agreed to these terms and Campbell signed the second notice letter. Yet, signing the second notice letter cannot be considered a valid acceptance because the terms within that letter and the attached AIC contract were different from the terms within the March 4 letter and its attached contract. The most notable differences were that within the AIC contract the cash payment dates were specifically defined, but within the contract attached to the March 4 notice letter they were not, and the March 4 letter gave Campbell 20 days to accept the offer, whereas the second notice letter did not give any time period in which Campbell was to accept.

■ Moreover, once the March 4 letter was given to Campbell, the Payne Entities could not change the terms of their offer. *West Texas Transmission, L.P.*, 907 F.2d at 1563 (citing *Sinclair Refining Co.*, 218 S.W.2d at 188; *Holland*, 728 S.W.2d at 822–23; *Henderson*, 470 S.W.2d at 413–14; 77 Am.Jur.2d *Vendor & Purchaser* § 49 (1975)). According to the terms of the March 4 letter, Campbell had 20 days in which to accept, and because the preferential right was supported by consideration, the option was irrevocable. *Henderson*, 470 S.W.2d at 412. While Campbell's counter-offer involving a six-month financing term did not reject the offer, *see Humble Oil & Refining Co. v. Westside Invest. Corp.*, 428 S.W.2d 92, 95 (Tex.1968), he still needed to accept the offer within the March 4 letter according to the terms and manner prescribed.

■ On March 5, 1991, Gordon signed the warranty deed from the Payne Entities and delivered it to Campbell after Campbell paid Gordon $35,000 and signed a six-month real estate lien note for $673,540. It was not until March 22, 1991, that Campbell signed and returned the March 4 letter to Gordon. While Campbell may argue that this was proper acceptance of the option, it is apparent, as a matter of law, from the events that occurred on March 5, that Campbell did not intend to perform the terms of the agreement when he signed the March 4 letter.

*See W.R. Larock, D.C., P.C. v. Enabnit*, 812 S.W.2d 670, 671 (Tex.App.—El Paso 1991, no writ) (holding that no contract is formed by the signing of an instrument when one party is aware that the other party does not intend to be bound by the wording of the instrument). When Campbell signed the March 4 letter on March 22, he never had the intent to comply with those terms. Under the authorities cited above and given the undisputed facts, we find that Campbell did not validly exercise his preferential right.

■ Parenthetically, while it is true that the March 4 letter containing Campbell's signature was admitted as evidence that Campbell had properly exercised his preferential right, the parol evidence rule does not prevent us from considering the events that occurred before Campbell signed the March 4 letter in determining the validity of Campbell's exercise of his preferential right of purchase. It is established that the rule "that parol evidence is inadmissible to contradict or vary the terms of a written contract applies only to a written contract in force as a binding obligation." *Baker v. Baker*, 143 Tex. 191, 183 S.W.2d 724, 728 (1944). Parol evidence is always admissible to show the nonexistence of a contract. *Id.*

Campbell further cites to *West Texas Transmission, L.P.*, 907 F.2d at 1566–67, and argues that the offer by the Payne Entities within the second notice letter was not a commercially reasonable or bona fide offer and its terms were specifically designed to defeat his preferential right. Even though Campbell's argument could be defeated because the terms within the second notice letter and the AIC contract are not relevant to the resolution of this case, we will review his argument as though he made the same assertion regarding the March 4 letter.

■ The Fifth Circuit Court in *West Texas Transmission, L.P.*, based upon a combination of Texas law and the law of other jurisdictions, set out three exceptions to the unequivocal acceptance rule of option agreements. The exceptions provide that a seller may not impose an offer upon the rightholder that is commercially unreasonable, that is offered in bad faith, and that is "specifically

designed to defeat" the preferential right. *West Texas Transmission, L.P.*, 907 F.2d at 1566–67. However, after a careful reading of *West Texas Transmission, L.P.*, we note that the Fifth Circuit created these exceptions based in a large part upon the law of other jurisdictions. Thus, rather than following these exceptions, we will directly follow Texas law. *See Jones v. Gibbs,* 133 Tex. 627, 130 S.W.2d 265, 271–73 (1939). In the *Jones* case, the court explicated the general rule regarding equitable relief in such cases. Equitable relief will be granted when the offeree failed to accept the offer within an option agreement if such failure resulted from fraud, surprise, accident, or mistake. *Jones,* 130 S.W.2d at 272–73. Equally, estoppel principles may apply if the offeror's conduct prevented the offeree from properly making his acceptance. *Id.*

■ However, there is no evidence in this record that the Payne Entities acted fraudulently or through their conduct prevented Campbell from accepting the terms of their March 4 offer. Neither did Campbell show that his failure to accept the offer exactly as made was the result of a mistake on his part, or that the offer to him was of a nature that made it impossible for him to exercise his preemptive right. As such, Campbell cannot claim that his failure to accept the option should be excused under the principles of equity.

In sum, we hold the trial court erred in its summary judgment by finding that Campbell's purchase of the ranch was the result of a proper exercise of his preferential right to purchase and was sufficient to terminate AIC's contractual right to the conveyance of the property. Having made that decision, we must now consider AIC's claim that it had established the AIC contract was enforceable, it tendered performance, and the Payne Entities had breached its contract. Consequently, it contends it was entitled to a partial summary judgment requiring specific performance of the contract and, in addition, removing the cloud upon title to the land cast by Maltese Cross's lien.

■ A purchaser of real estate is entitled to specific performance of a contract for sale of land when the contract is valid and enforceable, *Goode v. Westside Developers, Inc.,* 258 S.W.2d 844, 845–46 (Tex.Civ.App.—Waco 1953, writ ref'd n.r.e.), and when the terms of the contract are sufficiently clear so that the parties know of their obligations under the contract. *Langley v. Norris,* 141 Tex. 405, 173 S.W.2d 454, 459 (1943). If the seller breaches a contract for the sale of land and subsequently sells the land to another purchaser who has knowledge of the previous contract, then the subsequent purchaser stands in the shoes of the original seller when specific performance is sought and may be compelled to convey title to the first purchaser. *Langley,* 173 S.W.2d at 457. Finally, when the seller has conspicuously breached the contract, it is only necessary that the purchaser be ready and willing, and offers to perform within his pleadings. *Burford v. Pounders,* 145 Tex. 460, 199 S.W.2d 141, 144 (1947).

■ Because Campbell's purchase was not by virtue of his preferential right, he was merely a subsequent purchaser with knowledge of the prior AIC contract. Because of this, he stood in the shoes of the Payne Entities and was under the same obligation to convey as they were. Consequently, AIC was entitled to specific performance of the contract and to require Campbell to convey the premises to it.

■ Likewise, as a subsequent mortgagee, Maltese Cross took its lien on the ranch subject to AIC's rights because it had full knowledge of AIC's claims against the ranch. To acquire property interest without being subject to such prior claims, a mortgagee must have acquired its interest in the property in good faith, for value, and without notice of a claim asserted by a third party. *Houston First American Sav. v. Musick,* 650 S.W.2d 764, 769 (Tex.1983). Campbell and Maltese Cross entered a mortgage agreement contemporaneously with a deed of trust. At the time the mortgage agreement was entered into, this lawsuit and a *lis pendens* notice had been filed. The agreement expressly acknowledged the pending lawsuit. In addition, it is well established that any party who takes an interest in real property, when the title to the property is being litigat-

ed, and subsequent to the filing of a *lis pendens* notice, takes that interest subject to any judgment rendered in the pending cause. *Hartel v. Dishman,* 135 Tex. 600, 145 S.W.2d 865, 868 (1940) (construing then Revised Civil Statute article 6640, now Texas Property Code section 12.007). In view of these facts, Maltese Cross cannot claim it was a *bona fide* mortgagee. Therefore, AIC was entitled to summary judgment removing the cloud from its title to the land.

 In the underlying suit, AIC also alleged violations of the DTPA, fraud, and trespass. However, AIC, by failing to present any appellate argument, written or otherwise, challenging the portion of the summary judgment denying those claims, has waived any challenge to that ruling. *Howell v. Murray Mortg. Co.,* 890 S.W.2d 78, 81 (Tex. App.—Amarillo 1994, writ denied).

Finally, the remaining claims made by AIC included civil conspiracy and tortious interference with the AIC contract for which they sought both actual and exemplary damages. Specifically, AIC alleged in its summary judgment motion response that Campbell and McKay, at the March 4, 1991 meeting, exercised undue influence over Gordon to obtain the Payne Ranch deed on different terms from that which Campbell was entitled under his preferential purchase right. It further alleged Campbell was acting as agent for Maltese Cross and the O'Briens and, because Campbell did not properly exercise his preferential right, appellees were not legally justified in preventing AIC from obtaining the benefit of its bargain. In asserting the trial court erred in its summary judgment disposing of those claims, AIC contends there are genuine fact issues concerning those claims.

To the contrary, appellees counter these claims by arguing Campbell's actions were justified because he was merely attempting to exercise his contractual right to purchase the ranch. Thus, they reason, as a matter of law, Campbell cannot be found to have been attempting to wrongfully interfere or conspire to wrongfully interfere with the AIC contract. They also deny Campbell was acting as an agent, representative, or employee of Maltese Cross or the O'Briens. Finally, Maltese Cross and the O'Briens deny that they had any tortious knowledge of the AIC contract.

 A civil conspiracy is characterized as two or more parties corroborating in an attempt to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Great Nat'l Life Ins. Co. v. Chapa,* 377 S.W.2d 632, 635 (Tex.1964). To establish a civil conspiracy, a party must show 1) an agreement or understanding to inflict a wrong against or injury on another existed, 2) between two or more parties, 3) who had a meeting of the minds on the object or course of action, 4) and intended to commit the act, 5) which resulted in injury. *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.,* 435 S.W.2d 854, 857 (Tex.1968). To show a tortious interference with contractual relations, a plaintiff must prove 1) there was a contract subject to interference, 2) the act of interference was willful and intentional, 3) the intentional act was a proximate cause of plaintiff's damages, and 4) actual damage or loss occurred. *Juliette Fowler Homes, Inc. v. Welch Associates, Inc.,* 793 S.W.2d 660, 664 (Tex.1990).

 Because we have determined the AIC contract was valid and enforceable and after reviewing the summary judgment motions, responses, and supporting evidence, we find a genuine issue of material fact exists on the claims for civil conspiracy and tortious interference with contractual obligations. Thus, summary judgment as to those claims was improper and they must be remanded to the trial court for further proceedings.

In its final argument, AIC challenges the award of attorney fees to Maltese Cross. Because the award of attorney fees depends upon the survival of the judgment which resulted in the award of the attorney fees, *Spiller v. Spiller,* 901 S.W.2d 553, 560 (Tex. App.—San Antonio 1995, writ denied), the holding which we have made requires the reversal of that award.

In addition, in a footnote within its brief, AIC seeks the recovery of $8,093 from Campbell for the transcript cost. Because the holding which we have made will require an assessment of the costs against appellees,

further discussion of that contention is not necessary.

Also related to the issue of assessing court costs, the Payne Entities in their motion for rehearing assert that since AIC was not granted relief from the Payne Entities, it is improper for this court to assess a portion of the court costs against them. However, since the Payne Entities were named defendants in this case and since we found that they breached the AIC contract,[5] we find that the court costs are properly assessed.

In summary, that portion of the summary judgment negating AIC's tort claims seeking recovery for alleged DTPA, fraud and trespass claims is affirmed. That portion of the judgment in favor of appellees regarding AIC's breach of contract and specific performance claims, as well as the portion awarding Maltese Cross attorney fees is reversed, and judgment is rendered granting AIC specific performance requiring Campbell to convey title to the ranch to it. In addition, without impairing any obligation existing between Campbell and Maltese Cross, we render judgment removing and canceling the lien securing that obligation insofar as it might cloud AIC's title to the ranch. That portion of the summary judgment denying AIC's claims alleging civil conspiracy and tortious interference with contractual relations violation of the DTPA is reversed and that portion of AIC's action is severed and remanded to the trial court for further proceedings.

---

5. Even though specific performance was granted against Campbell, it was done so because Campbell stood in the shoes of the Payne Entities. *See Langley,* 173 S.W.2d at 457. If the Payne Entities had not breached the AIC contract, AIC would not have been entitled to specific performance against Campbell.