NO. 07-07-0373-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

OCTOBER 31, 2008
______________________________

DION’S OF TEXAS, INC. , 

                                                                                                 Appellant

v.

SHAMROCK ECONOMIC DEVELOPMENT CORPORATION, 

                                                                                                 Appellee

________________________________

FROM THE 31ST DISTRICT COURT OF WHEELER COUNTY;

NO. 11,576; HON. JOHN T. FORBIS, PRESIDING
_______________________________

Memorandum Opinion
                                          _______________________________

Before QUINN, C.J., CAMPBELL, J. and BOYD, S.J.



          Dion’s of Texas, Inc. (Dion’s) appeals from a final summary judgment rendered in
favor of Shamrock Economic Development Corporation (Shamrock) for past rent and
termination of a lease. Through six issues, it contests the propriety of the judgment. Each,
however, involves the alleged option to purchase realty Shamrock granted Dion’s in the
lease agreement. Furthermore, Dion’s claimed to have exercised the option before
Shamrock terminated the lease. We affirm the judgment.
          Background
          Shamrock and Dion’s entered into a lease agreement in January 1994 for a building
owned by Shamrock. The lease term was seven years with an option to renew for an
additional eight years if Dion’s was not in default. In addition to receiving a monthly credit
towards the rentals (which depended upon the number of employees hired), Dion’s also
received via the lease “an exclusive right of first refusal to purchase the premises.” The
latter could be exercised at any time during the term of the lease by written notice. 
Moreover, the purchase price was liquidated at $240,000, which price would be reduced
by the lease payments which were made including the job credits mentioned above. 
          At the end of the initial term, the parties renewed the lease per the same terms
effective January 2001. Eventually, the lessee defaulted in its rental payments. 
Consequently, Shamrock sued it, on July 14, 2004, seeking $10,000 in past rent and
repossession of the premises. The suit remained pending for several years before Dion’s
attempted to exercise the option to purchase via a letter sent on May 9, 2006. Shamrock
responded by informing Dion’s, by letter dated May 15, 2006, that it considered the lease
terminated for non-payment of rent, non-payment of taxes, non-payment of insurance, and
other violations. 
          On May 26, 2006, Dion’s filed a counterclaim in which it conceded being “in default
in the payment of the full rent required for 2003, 2004, 2005, and through this date in
2006.” However, it also sought specific performance of the right to purchase. This led
Shamrock to amend its petition to allege that 1) Dion’s also defaulted in paying the property
taxes and insuring the premises, 2) $38,000 was due in past rentals, and 3) the lease had
terminated. Thereafter, it filed a motion for summary judgment seeking to have judgment
rendered on its amended petition. 
          In turn, Dion’s amended its counterclaim to add demands for reformation of the
lease and for a construction of the contract as it pertained to the credits it purportedly
earned through the years. So too did it move for summary judgment. The trial court
denied Dion’s motion for summary judgment, granted that of Shamrock, awarded
Shamrock $32,598 in past rent,


 and declared the lease terminated. 
          Termination of the Lease
          No one questions whether the lease vested Shamrock with the authority to terminate
it upon default by Dion’s and notice by Shamrock. No one questions that Dion’s failed to
perform various duties imposed by the lease or that Shamrock notified Dion’s in writing of
the defaults and of its intent to terminate the lease per the lease terms. Dispute arises as
to whether Dion’s exercised its option to purchase before Shamrock terminated the
agreement. According to Dion’s, if it did, then there was no lease to terminate. 
          The option in question read: 
          In consideration of the execution of this lease agreement, 
LESSOR hereby grants to LESSEE, an exclusive right of first refusal to
purchase the premises. This option may be exercised by LESSEE at any
time during the term of this lease by written notice to LESSOR. This option
shall be irrevocable during the period of this lease agreement or any renewal
and extension hereof, and will expire on termination of the lease agreement,
or any renewal thereof, without notice to LESSEE.
(Emphasis added). In reading this provision, the words we italicized give us pause. They
do not speak of a unilateral right to buy at anytime. Rather, the verbiage describes a “right
of first refusal.” As such, the right granted Dion’s the opportunity to buy the land and facility
if Shamrock decided to sell it. See Abraham Inv. Co. v. Payne Ranch, Inc., 968 S.W.2d
518, 524 (Tex. App.–Amarillo 1998, pet. denied); National Adv. Co. v. Potter, No. 01-06-01042-CV, 2008 Tex. App. Lexis 2462 at *8-9 (Tex. App.–Houston [1st Dist.] April 3, 2008,
pet. denied) (defining a right of first refusal as a preemptive or preferential right of purchase
giving one party the first opportunity to buy property before it can be sold to another). 
Unlike a true option, one holding the preemptive right cannot force an unwilling landowner
to sell. Riley v. Campeau Homes, Inc., 808 S.W.2d 184, 187 (Tex. App.–Houston [14th
Dist.] 1991, writ dism’d). And, until the landowner decides to sell, one with a right to first
refusal has nothing to exercise. Id.; see Abraham Inv. Co. v. Payne Ranch, Inc., 968
S.W.2d at 524-25 (stating that the preferential right ripens into an option at the moment the
property owner gives notice of his intent to sell). So, before Dion’s could buy the realty at
issue, Shamrock must first have attempted or at least intended to sell it.


 Id. And, we find
nothing in the lease or language used by the parties to render the provision and its effect
ambiguous. 
          Next, Dion’s cites us to no evidence of record evincing an attempt by Shamrock to
sell the land. Nor are we cited to any evidence suggesting that the owner intended or
desired to sell the property prior to the time Dion’s opted to buy it. Nor did our own search
of the record fill the void. Without that evidence, Dion’s did not prove, as a matter of law,
that it had an option to buy in the manner that it did before Shamrock ended the lease. 
Thus, the trial court did not err in entering summary judgment declaring that the lease had
terminated.
          The issue of termination is dispositive, and our resolution of it frees us from having
to address the remaining contentions in appellant’s brief. Consequently, we affirm the
summary judgment rendered by the trial court.
 
                                                                           Brian Quinn
                                                                          Chief Justice 



s-serif">          As a general rule, when the State’s evidence shows multiple instances of conduct
conforming to a single indictment allegation, on proper request the State must elect the
instance on which it will rely for conviction. Martinez v. State, 225 S.W.3d 550, 555
(Tex.Crim.App. 2007); O’Neal v. State, 746 S.W.2d 769, 771 (Tex.Crim.App. 1988). 
Appellant’s contentions concerning election have no application to count II, which was the
only count alleging appellant caused the boy to contact his genitals. The only evidence
supporting that count showed the incident happened on March 14. Nor do we think
appellant’s issues concerning election have application to count I, which alleged appellant
had contact with the boy’s genitals on March 14. The record is abundantly clear that the
State relied on its evidence of the events of March 14 to show appellant’s guilt under count
I. 
          The other four counts were identical except for their on-or-about dates, and the
State did not attempt to show the specific date on which any of the vehicle incidents
occurred. After the State rested its case-in-chief, appellant asked the court to require the
State to elect which acts it was relying on to seek a conviction. The court denied
appellant’s request. As noted, the jury found appellant guilty of two of the counts and not
guilty of two.
          We agree with appellant that, by the State’s evidence, the jury was told of multiple
instances of conduct by appellant conforming to the allegations of the two counts of which
he was found guilty.


 The State concedes the trial court committed error by failing to
require an election in that circumstance, and we agree. But the State contends the error
was harmless, and we agree with that contention as well.
          We analyze the harm resulting from failure to require an election by considering its
consequences with regard to the four purposes Texas courts have identified for the
election rule: (1) to protect the accused from the introduction of extraneous offenses; (2)
to minimize the risk that the jury might choose to convict, not because one or more crimes
were proved beyond a reasonable doubt, but because all of them together convinced the
jury the defendant was guilty; (3) to ensure unanimous verdicts, that is, all of the jurors
agreeing that one specific incident, which constituted the offense charged in the indictment,
occurred; and (4) to give the defendant notice of the particular offense the State intends
to rely on for prosecution and afford the defendant an opportunity to defend. See Dixon
v. State, 201 S.W.3d 731, 734 (Tex.Crim.App. 2006) (so analyzing harm); Phillips v. State,
130 S.W.3d 343, 349 (Tex.App.–Houston [14th Dist.] 2004), aff’d 193 S.W.3d 904
(Tex.Crim.App. 2006) (describing purposes). Appellant focuses his argument on two of the
four purposes of the rule, proper notice and jury unanimity. Our analysis is conducted
under the standard for constitutional error, requiring reversal unless we find beyond a
reasonable doubt that the error did not contribute to the conviction or punishment.


 Tex.
R. App. P. 44.2(a); Dixon, 201 S.W.3d at 734, citing Phillips, 193 S.W.3d at 914.



          In Dixon, the Court of Criminal Appeals conducted a harm analysis in a case
involving sexual assault of a child about the same age as the victim here. Dixon, 201
S.W.3d at 731. The victim in Dixon described how the defendant assaulted her, relating
a sequence of events that occurred, according to her testimony, “one hundred times.” The
only distinction among the occurrences to which the child testified was that one incident
occurred during the day, but all others were at night. Id. at 731. Similarly, the boy here
testified to the place and manner in which appellant fondled him. The boy said appellant
“gently squeezed” his “pee-pee” while they were in the front seat of appellant’s “SUV.” 
Asked how many times such incidents occurred, he once said two times, later said three
times and elsewhere indicated as many as five or six times. He said the incidents
happened on “different days.” 
          In Dixon, en route to its conclusion, beyond a reasonable doubt, that the trial court’s
error in failing to require an election did not contribute to the defendant’s conviction or
punishment, the court rejected contentions that the defendant was deprived of adequate
notice, 201 S.W.3d at 736, and that there was a risk of a non-unanimous verdict. Id. at
735. Given the similarities between the evidence presented in Dixon and the State’s
evidence supporting counts III and IV here, we find the Court of Criminal Appeals’s
analysis of harm in that case applicable here. If the jury believed the boy’s testimony that
appellant fondled him while they rode in his vehicle, its decision on appellant’s guilt did not
turn on which incident occurred on or about which date, but turned on how many incidents
of fondling it determined had occurred. See Young v. State, No. 14-08-00629-CR, 2009
WL1660698 (Tex.App.–Houston [14th Dist.] June 16, 2009, no pet.) (mem. op., not
designated for publication); Jackson v. State, Nos. 10-07-00129-CR, 10-07-00130-CR,
10-07-00131-CR, 10-07-00132-CR, 10-07-00133-CR, 10-07-00134-CR, 2008 WL 4149940
(Tex.App.–Waco Sept. 3, 2008, pet. ref’d) (mem. op., not designated for publication);
Ramon v. State, No. 11-07-00062-CR, 2008 WL 2612569 (Tex.App.–Eastland July 3,
2008, pet. ref’d) (mem. op., not designated for publication) (all also applying Dixon analysis
in comparable cases). And, as the State points out, the jury’s acquittal of appellant on two
of the four counts supports the conclusion the absence of an election was harmless. 
Appellant’s first two issues are overruled. 
Hearing Regarding Proper Outcry Witness
          In appellant’s third issue, he contends the trial court erred by refusing to hold a
hearing required by article 38.072 of the Code of Criminal Procedure. Tex. Code Crim.
Proc. Ann. art. 38.072 (Vernon Supp. 2004-05). Prior to trial, the State filed notice of its
intent to introduce outcry statements pursuant to article 38.072 through two witnesses, the
boy’s father and a police officer. Article 38.072 provides that outcry testimony from the first
adult, other than the defendant, to whom a child witness made statements describing an
alleged offense against the child will not be inadmissible because of the hearsay rule if the
article’s requisites are met.



          The law is clear that the requirements of article 38.072 are mandatory and must be
followed for the outcry statement to be admissible over a hearsay objection. Long v. State,
800 S.W.2d 545, 547 (Tex.Crim.App. 1990); Duncan v. State, 95 S.W.3d 669, 671
(Tex.App.–Houston [1st Dist.] 2002, pet. ref’d). At trial, appellant apprised the trial court of
his request for a hearing by requesting a hearing pursuant to article 38.072, bench filing
his objection pursuant to Rule 802 of the Texas Rules of Evidence and a motion for
hearing pursuant to article 38.072 and obtaining a running objection concerning these
issues. Lankston v. State, 827 S.W.2d 907, 911 (Tex.Crim.App. 1992). Thus, as the State
concedes, the trial court abused its discretion by admitting testimony to the boy’s outcry
without first conducting a hearing to identify the outcry witness and to make the required
finding concerning the reliability of the statement. Duncan, 95 S.W.3d at 671; Bottenfield
v. State, 77 S.W.3d 349, 359 (Tex.App.–Fort Worth 2002, pet. ref’d).
 
          To assess the harm resulting from the trial court’s error, we apply the standard
applicable to non-constitutional error. Tex. R. App. P. 44.2(b); Bottenfield, 77 S.W.3d at
359-60. Non-constitutional error must be disregarded unless it affects substantial rights
of the defendant. Johnson v. State, 43 S.W.3d 1, 4 (Tex.Crim.App. 2001). A substantial
right is affected when the error had a substantial and injurious effect or influence in
determining the jury’s verdict. King v. State, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997);
Hankton v. State, 23 S.W.3d 540, 548 (Tex.App.–Houston [1st Dist.] 2000, pet. ref’d). A
conviction should not be overturned for such error if, after examining the record as a whole,
we have fair assurance the error did not influence the jury, or had but a slight effect. 
Johnson v. State, 967 S.W.2d 410, 417 (Tex.Crim.App. 1998). Likewise, improper
admission of evidence is not reversible error if the same or similar evidence is admitted
without objection at another point in the trial. Leday v. State, 983 S.W.2d 713, 718
(Tex.Crim.App. 1998); Moore v. State, 233 S.W.3d 32, 36 (Tex.App.–Houston [1st Dist.]
2007, no pet). See also Duncan, 95 S.W.3d at 672 (improper admission of outcry
testimony was harmless error because similar testimony was admitted through
complainant, pediatrician, and medical records). 
          The State’s article 38.072 notice stated the following summary of the boy’s father’s
anticipated outcry testimony:
On or about March 20, 2006, the victim, disclosed numerous incidents
of sexual abuse, including multiple acts of Indecency with a Child. On or
about March 20, 2006, the victim told [his father] that the defendant, Royce
Jiminez, had exposed his penis to the victim, caused the victim to touch the
defendant’s penis, caused the victim to expose his penis to the defendant,
and the defendant touched the victim’s penis. Additionally, the victim stated
that the defendant had touched the victim’s penis on numerous occasions. 
 
The notice gave the following summary of the testimony of the interviewing police officer:
 
On or about March 24, 2006, the victim, disclosed numerous incidents
of sexual abuse, including acts of Indecency with a Child. On or about
March 20, 2006, the victim told him that the defendant, Royce Jiminez, had
exposed his penis to the victim, caused the victim to touch defendant’s penis,
caused the victim to expose his penis to the defendant, and the defendant
touched the victim’s penis. The victim also stated that the defendant would
“squeeze” the victim’s penis and stated the defendant wanted to see if the
victim’s penis “got hard.” Victim also stated defendant would tell victim “not
to tell” and/or that the sexual abuse was a secret. Additionally, the victim
stated that the defendant had touched the victim’s penis on five different
occasions.
 
          As noted, the boy testified without objection at trial both to the incident in the clinic
restroom, when he said appellant touched his penis and had the boy touch appellant’s
penis, and to appellant’s fondlings of his penis in appellant’s vehicle. The trial testimony
presented by the boy’s father and the police officer was consistent with the summaries
provided in the State’s notice, and related the boy’s reports of the same events to which
the boy testified.
          Because the outcry witnesses’ testimony included the same facts that were admitted
into evidence without objection, we must conclude the trial court’s error in admitting the
outcry testimony without the required hearing did not affect appellant’s substantial rights,
and thus was harmless. Tex. R. App. P. 44.2(b); Thomas v. State, 1 S.W.3d 138, 142
(Tex.App.–Texarkana 1999, pet. ref’d) (error in admission of improper outcry witness was
harmless when other proper evidence of such statements was admitted); Duncan, 95
S.W.3d at 672.
          We overrule appellant’s third issue.
Admission of Interview Video 
          In appellant’s fourth issue, he complains of the trial court’s admission, over his
hearsay objection, of the video interview of the boy, conducted by a forensic interviewer.
The State argues that appellant painted the boy as a liar and the video thus was
admissible as a prior consistent statement. The State also contends that because the
same evidence came in elsewhere without objection, any error was cured.
          We first address the State’s argument that the video was admissible as a prior
consistent statement under Rule 801(e)(1)(B). See Tex. R. Evid. 801(e)(1)(B). The Texas
Court of Criminal appeals has recognized four requirements that must be met for prior
consistent statements to be admissible. Hammons v. State, 239 S.W.3d 798, 804
(Tex.Crim.App. 2007). The State has not satisfied the fourth requirement that “the prior
consistent statement must be made prior to the time that the supposed motive to falsify
arose.” Id. Appellant’s theory of the case at trial was that the boy’s motive to lie arose
when his father began to question him about a statement he had made in front of
appellant. Appellant asserted the boy lied to his father during that conversation, then
repeated the lies to the forensic interviewer and in court.


 See, e.g., Torris v. State, No.
05-07-00829-CR, 2008 WL 3307093 (Tex.App.–Dallas July 31, 2008, pet. struck)
(videotaped statement was made well before witness met with prosecutors when the
supposed alteration in testimony was to have occurred, making the statement admissible
as a prior consistent statement). The videotaped statement was made after this discussion
took place, thereby running afoul of the fourth requirement and making the statement
inadmissible under Rule 801(e)(1)(B). See Martinez v. State, 276 S.W.3d 75, 82-83
(Tex.App.–San Antonio 2008, pet. ref’d) (recorded statement not admissible under Rule
801(e)(1)(B) to refute suggestion victim falsely accused defendant because victim’s alleged
motive to lie arose before CPS statement was recorded); citing Harughton v. State, 805
S.W.2d 405, 407-08 (Tex.Crim.App. 1990) (finding video statement not admissible as prior
consistent statement because alleged motive for fabrication arose prior to video
statement). See also Dowthitt v. State, 931 S.W.2d 244, 264 (Tex.Crim.App. 1996). We
find the trial court erred in admitting the videotape.
          However, the error does not require reversal for the same reason the admission of
the outcry witness testimony did not. In situations where an improperly admitted videotape
“essentially repeated the testimony” of the victim, when the victim also testifies and the
videotape is cumulative of the victim’s properly admitted testimony on the same issue,
courts often disregard the error reasoning that it could not have affected the appellant’s
substantial rights.


 Dunn, 125 S.W.3d at 615, citing Jensen v. State, 66 S.W.3d 528, 537
(Tex.App.–Houston [14th Dist.] 2002, pet. ref’d); Matz v. State, 21 S.W.3d 911, 912
(Tex.App.–Fort Worth 2000, pet. ref’d) (op. on remand). That is the case here. We find
that, because the testimony of the boy at trial “essentially repeated” the statement
contained in the videotaped interview, the erroneous admission of the tape does not affect
the substantial rights of appellant. See Tex. R. App. P. 44.2(b). We overrule appellant’s
fourth issue.Confrontation through Cross-Examination
          In appellant’s last issue, he contends the trial court erred by disallowing him from
questioning the boy’s father about his disciplinary practices before the jury. He argues the
practices provided an additional motivation for the boy to lie to his father during their initial
conversation, and he was deprived of the opportunity to cross-examine the father about the
motive. 
          The evidence showed that appellant and the boy’s father had a conversation in which
appellant related his version of the events in the clinic restroom, indicating the boy made a
comment about appellant’s penis. Appellant also told the boy’s father that the boy recently
had made a comment about the penis of a horse they saw while driving in appellant’s
vehicle.


 The boy’s father decided to talk with his son about those events, and took him into
the study of their home and closed the door. During their conversation, the boy made the
outcry statement against appellant. The father further testified he “can be a hard dad,” and
that going into the study and closing the door would have indicated to his son that their
conversation would be serious. Asked if that setting typically indicated the discussion would
be serious, the father said, “Yeah, it’s a serious talk . . . . It has to do with his behavior, with
his mom, or school grades.”
          As noted, appellant’s theory of the case at trial was that the boy lied to his father
during that conversation, then repeated the lies to the forensic interviewer and in court. To
pursue that theory, appellant took the boy’s father on voir dire examination outside the
presence of the jury. Asked how he disciplined his son, the father said he “put him in time
out.” He also said at times he took his son to a public field for what he called “boot camp,”
which he defined as “[g]oing out to a field and doing agilities, bear crawls, things like that.” 
He also had the boy do exercises he called “up-downs,” where the boy would run five yards,
drop to the ground and do five push-ups, get up and run again. Asked how his son reacted
to the boot camp activities, the father said, “He does it. He . . . does the bear crawls or the
up and downs, and he responds and his behavior is corrected.” 
          Following this offer of proof, the State objected pursuant to Rules 608(b), 401 and
403. See Tex. R. Evid. 608(b), 401, 403. The State argued that the questions elicited
specific instances of physical discipline of the boy. The State further argued the evidence
was not relevant, and that it was more prejudicial than probative because the defense was
trying to insinuate the boy’s father was a bad parent or utilized bad parenting skills. The trial
court sustained the objections, the action of which appellant complains in his fifth issue.
          We review a trial court’s decision to exclude evidence under an abuse of discretion
standard. Mozon v. State, 991 S.W.2d 841, 846-47 (Tex.Crim.App. 1999); Montgomery v.
State, 810 S.W.2d 372, 379-80 (Tex.Crim.App. 1991) (op. on reh’g). An abuse of discretion
occurs when a trial court’s decision is so clearly wrong that it lies outside the “zone of
reasonable disagreement.” Gonzales v. State, 117 S.W.3d 831, 839 (Tex.Crim.App. 2003). 
We first note our agreement with appellant that the right to confrontation by cross-examination is a fundamental constitutional right. Thomas v. State, 897 S.W.2d 539, 542
(Tex.App.–Fort Worth 1995, no pet.), citing Shelby v. State, 819 S.W.2d 544 (Tex.Crim.App.
1991). The exposure of a witness’s motivation to testify is a proper and important function
of cross-examination. Thomas, 897 S.W.2d at 542, citing Olden v. Kentucky, 488 U.S. 227,
109 S.Ct. 480, 102 L.Ed. 513 (1988). We further agree that while extrinsic evidence of
specific acts of conduct is generally not admissible to attack a witness’s response, an
exception exists where evidence shows bias or motive for the witness to testify untruthfully.
Thomas, 897 S.W.2d at 542, citing Murdock v. State, 840 S.W.2d 558 (Tex.App.–Texarkana
1992), rev’d on other grounds, 856 S.W.2d 262.
          But the trial court also maintains broad discretion to impose reasonable limits on
cross-examination. Lagrone v. State, 942 S.W.2d 602, 613 (Tex.Crim.App. 1997). The trial
court must carefully consider the probative value of the evidence and weigh it against the
risks of admission, inter alia, harassment, undue prejudice, confusion of the issues,
endangering the witness, and the injection of cumulative or collateral evidence. Lagrone, 942
S.W.2d at 613; Hodge v. State, 631 S.W.2d 754, 758 (Tex.Crim.App. 1982). A trial court
must weigh each Confrontation Clause issue on a case-by-case basis, so that both the
defendant's right to cross-examine and the risk factors associated with the admission of the
evidence are carefully taken into account. Hoyos v. State, 951 S.W.2d 503, 510 (Tex.App.–
Houston [14th Dist.] 1997), aff'd, 982 S.W.2d 419 (Tex.Crim.App.1998). See also Davis v.
Alaska, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). 
          Appellant cross-examined the boy’s father on the serious setting of their outcry
conversation, and on his own description of himself as a “hard dad.” The record of cross
examination contains the following exchange: 
          Q:       Okay. Now, [boy’s father], you also mentioned that the study is where you
settle issues; is that correct?
          A:       That is correct.
          Q:       And that you can be a hard dad; is that correct, as well?
          A:       That is correct.
          Q:       And that any time you took [the boy] into the study, it was going to be for
serious matters, such as his behavior . . . . Is that fair to say, as well?
          A:       Yes, sir.
 
          The father’s testimony provided ample basis for appellant to argue the boy had a
motivation to lie to avoid discipline for his comments about the horse’s penis and appellant’s. 
The father’s testimony that his disciplinary methods involved time out and boot camp would
have provided cumulative or collateral evidence at most, and we think the trial court also
reasonably could have determined the testimony risked confusing the issues. 
          Appellant relies on Thomas, 897 S.W.2d at 542. However, the testimony appellant
proferred had far less probative value than the evidence excluded in Thomas. There, the
defendant admitted he and the complainant engaged in sexual intercourse but he claimed
it was consensual. Thomas, 897 S.W.2d at 541. The trial court disallowed the defendant
from cross examining the complainant about her jealous and violent boyfriend, and her fear
of him. Id. at 541-42. The defendant successfully argued on appeal that the testimony was
admissible, and that its exclusion was harmful, pointing out his sole defense was that the
complainant fabricated the assault because she feared her boyfriend. Id. at 542. 
          We cannot find an abuse of discretion by the trial court in denying appellant’s offer
of proof and refusing to permit him to ask questions of the boy’s father concerning the
discipline of his child. We overrule appellant’s fifth issue.
          Finding no reversible error, we affirm the judgment of the trial court. 
                                                                                       

 
 
                                                                           James T. Campbell

                                                                                    Justice

 

Do not publish.